**William Edward GOODERMOTE, Plaintiff, Appellant,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant, Appellee.**

No. 82–1394.

United States Court of Appeals, First Circuit.

Submitted Aug. 2, 1982.

Decided Sept. 1, 1982.

---

Louis Kerlinsky, Springfield, Mass., on brief for plaintiff, appellant.

William Weld, U. S. Atty., Charles K. Mone, Asst. U. S. Atty., and Robert J. Triba, Asst. Regional Atty., Dept. of Health and Human Services, Boston, Mass., on brief for defendant, appellee.

Before COFFIN, Chief Judge, CAMP-BELL and BREYER, Circuit Judges.

BREYER, Circuit Judge.

The claimant, William Goodermote, is a 52 year-old man with a 10th grade education. He has worked in the past as a cab driver, furniture mover, factory laborer, and operations manager of a security guard business. He applied for Social Security disability benefits based upon claims of various impairments. After a hearing, an administrative law judge denied the claim on the ground that Goodermote was not "disabled" within the meaning of the relevant statute, 42 U.S.C. § 423(d). Goodermote exhausted internal appeals within the Social Security Administration (SSA), the district court upheld the SSA's denial of benefits; Goodermote appeals to this court.

The ultimate question in this case is whether Goodermote is disabled within the meaning of 42 U.S.C. § 423(d). That provision defines "disability" as

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment ... [lasting at least a year and] of such severity that [the claimant] ... is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him or whether he would be hired if he applied for such work.

Thus, "disability" under this statute has a "medical" part, concerning the nature and severity of a claimant's impairment, and a "vocational" part, concerning the availability of suitable work.

The SSA, in evaluating a claim under this statute, applies sequentially a series of tests embodied in its regulations. 20 C.F.R. § 404.1520 (1982). *See also* 20 C.F.R. § 404.1503 (1980). In particular, the agency asks five questions in the following order:

First, is the claimant currently employed? If he is, the claimant is automatically considered not disabled.

Second, does the claimant have a severe impairment? A "severe impairment" means an impairment "which significantly limits his or her physical or mental capacity to perform basic work-related functions." If the claimant does not have an impairment of at least this degree of severity, he is automatically considered not disabled.

Third, does the claimant have an impairment equivalent to a specific list of impairments contained in the regulations' Appendix 1? If the claimant has an impairment of so serious a degree of severity, the claimant is automatically found disabled.

These first three tests are "threshold" tests. If the claimant is working or has the physical or mental capacity to perform "basic work-related functions," he is automatically considered not disabled. If he has an Appendix 1-type impairment, he is automatically considered disabled. In either case, his claim is determined at the "threshold." If, however, his ability to perform basic work-related functions is impaired significantly (test 2) but there is no "Appendix 1" impairment (test 3), the SSA goes on to ask the fourth question:

Fourth, does the claimant's impairment prevent him from performing work of the sort he has done in the past? If not, he is not disabled. If so, the agency asks the fifth question.

Fifth, does the claimant's impairment prevent him from performing other work of the sort found in the economy? If so, he is disabled; if not, he is not disabled.

■ Many of the social security cases that reach us concern the fourth and fifth questions, applying the "vocational" tests. We have held, for example, that the claimant has the burden of proving that he is disabled under the fourth test; that is to say, he must prove that his disability is serious enough to prevent him from working at his former jobs. The Secretary, however, has the burden of showing the claimant has not satisfied the fifth test; that is to say, the Secretary must show that there are other jobs in the economy that claimant can nonetheless perform. The Secretary has promulgated a set of medical-vocational guidelines (the Grid), 20 C.F.R. Part 404, Subpart P, Appendix 2 (1982), to simplify the application of the fifth test. *See, e.g., Sherwin v. Secretary of Health and Human Services,* 685 F.2d 1 (1st Cir. June 22, 1982); *Vazquez v. Secretary of Health, Education and Welfare,* 683 F.2d 1 (1st Cir. 1982); *Torres v. Secretary of Health and Human Services,* 677 F.2d 167 (1st Cir. 1982).

■ We set forth this framework simply to orient the reader as to where we are in the constellation of SSI rules and regulations. This case, in fact, does not involve either the fourth or fifth "vocational" questions. It involves the second question whether the claimant has an impairment significant enough to warrant going beyond the "medical" facts and looking at "vocational" matters. Since the validity of the SSA's regulations embodying this total set of sequential tests has been upheld elsewhere, *Chapman v. Schweiker,* No. 81–1025 (10th Cir. Feb. 26, 1982); *Lofton v. Schweiker,* 653 F.2d 215 (5th Cir. 1981), and since appellant here does not challenge the validity of these regulations, the sole question presented here is whether substantial evidence supports the SSA's finding that the claimant has been unable to overcome the threshold "medical" hurdle posed by the second question.

The relevant test (the second question), set out at 20 C.F.R. § 404.1503(c) (1980), reads as follows:

(c) *Does the individual have any severe impairment?* Where an individual does not have any impairment(s) which significantly limits his or her physical or mental capacity to perform basic work-related functions, a finding shall be made that he or she does not have a severe impairment and therefore is not under a disability without consideration of the vocational factors.

*See also* 20 C.F.R. § 404.1520(c) (1982). As far as the claimant's physical disabilities are concerned, there is adequate evidence that he has failed this test. Claimant applied for benefits in August 1979, claiming disability because of blindness in his left eye, high blood pressure, alcoholism, and orthopedic problems. There is considerable evidence, however, that claimant has suffered these problems, while working, for many years. He has been blind in one eye since 1938, but with glasses he can see well with his other eye. His high blood pressure is "mild to moderate" and is controlled by medication. His alcoholism has not been a problem since 1976 when he stopped drinking, and his feet have responded to treatment. Claimant does not challenge these findings of the ALJ.

On this appeal, claimant's sole argument is that the ALJ took inadequate account of a "mental" impairment. The strongest evidence in claimant's favor consists of a one-page form prepared by a Dr. Askinazi. That form states that claimant's impairment is "alcoholism," and that his impairment has led to a "significant restriction of basic work-related functions." It adds that, out of ten "functions of elemental work," the impairment imposes no restriction on five and a "moderate" restriction on the other five. The impaired "functions of elemental work" as listed on the form are the following:

| FUNCTIONS OF ELEMENTAL WORK: (For claimant with skilled backgrounds, make additional comments regarding skills required). | RESTRICTION | | |
|---|---|---|---|
| | None** | Moderate | Marked |
| 1. Getting to and from work independently. | ✓ | | |
| 2. Relating to direction of supervisor. | ✓ | | |
| 3. Relating to co-workers. | ✓ | | |
| 4. Working without undue assistance/direction. | | ✓ | |
| 5. Working daily 8-hour shifts with usual rest periods. | | ✓ | |
| 6. Remembering and following instructions. | | ✓ | |
| 7. Using common sense. | ✓ | | |
| 8. Ordinary mental functions, reading, counting. | ✓ | | |
| 9. Meeting ordinary production standards. | | ✓ | |
| 10. Accommodating to work stress. | | ✓ | |

** NOT A SIGNIFICANT RESTRICTION.

Dr. Askinazi adds in a handwritten note that "the medical evidence indicates a chronic depression but *without* persistent weight loss, sleep disturbance or suicidal acts or preoccupation and the depression has *not* markedly decreased his daily functioning when patient is able to abstain from alcohol. Work impairment significant but does not meet or equal listings." (Emphasis in original.)

The basic question is whether the ALJ is justified in reaching a conclusion different from that of Dr. Askinazi—whether he can conclude that there are no "significant" limitations on claimant's ability to perform work despite Dr. Askinazi's finding that five basic work-related functions are subject to "moderate" restrictions. The regulation itself does not compel the ALJ to follow Dr. Askinazi, for it does not define "significant" in terms of a limitation of "any" basic work-related functions. Rather, it speaks of limitations of "basic work-related functions" generally and in the plural, thus suggesting that the ALJ has some discretion in evaluating the significance of an impairment that affects some, but not all, of the ten "functions" that are listed on its psychiatric evaluation form.

There is here evidence justifying the exercise of the ALJ's discretion to reject the claim. For one thing, a second psychologist, Dr. Erwin Klepper, also examined Mr. Goodermote. In his lengthy detailed report, he finds that the claimant has a "chronic depression" and recommends an antidepressant medicine. He adds, however, that the claimant does not suffer from "sleep disturbance," his thinking is "still quite sharp" and he "is an excellent candidate for mechanical repair training." The report, as a whole, might reasonably be read to indicate that the claimant has some mental problem, but that it is not severe.

For another thing, Dr. Askinazi's report itself shows moderate restrictions of some functions but not others. It also lists the 'impairment' not as depression but as "alcoholism;" its conclusions rest in part upon alcoholism. But other evidence suggests that alcoholism was no longer claimant's problem. Further, claimant himself did not list any mental problem when first applying for disability. And, the initial evaluating agency, the Massachusetts Disability Determination Service ("MDDS"), found that the claimant would be able to return to his past work.

On the basis of this evidence, the ALJ concluded that the claimant suffered from "moderate depression and anxiety with no evidence of current hallucinations, delusions, deterioration of personal habits, marked restriction in daily activities or serious impaired ability to relate to other people." This conclusion is supported in the record. It, in turn, warrants the ALJ's further conclusion that no "severe impairment" was shown. Under the regulations, this finding warrants a conclusion of 'not disabled.'

We find no merit to Goodermote's claim that the ALJ overlooked the report of Dr. Askinazi. While the ALJ did not specifically discuss Dr. Askinazi's report, he quoted at length from the MDDS evaluation which, in turn, accurately summarized the contents of that report.

In sum, the record shows "substantial evidence" in support of the ALJ's conclu-

sion. The judgment of the district court is therefore

*Affirmed.*