**Blanche TAYLOR, Plaintiff,**

v.

**Margaret M. HECKLER, Secretary of Health and Human Services, Defendant.**

**Civ. No. 84–0254–B.**

United States District Court, D. Maine.

Aug. 17, 1984.

William E. Macdonald, Bangor, Me., for plaintiff.

Timothy C. Woodcock, Asst. U.S. Atty., Bangor, Me., for defendant.

## ORDER REMANDING ACTION TO THE SECRETARY

GENE CARTER, District Judge.

This action is brought under sections 205(g) and 1631(c)(3) of the Social Security Act [Act], 42 U.S.C. §§ 405(g) & 1383(c)(3) to review the final determination of the Secretary of Health and Human Services [Secretary] denying the plaintiff's application for Supplemental Security Income [SSI] and disability insurance benefits. Plaintiff filed an application for disability insurance benefits and for SSI on February 7, 1983, alleging an inability to work since February 28, 1980.[1] The applications were denied initially and upon reconsideration. A *de novo* hearing was held on January 24, 1984 before a Social Security Administration administrative law judge [ALJ], and on May 23, 1984 the ALJ found that plaintiff was not disabled within the meaning of the Act. On August 23, 1984 the ALJ's decision became the "final decision" of the Secretary upon its affirmance by the Appeals Council.

Plaintiff has exhausted her administrative remedies and moves for summary judgment. The defendant has filed a motion for an order affirming her "final decision" together with a certified copy of the transcript of the entire record of the proceedings relating to plaintiff's applications, including the testimony and documentary evidence upon which the decision of the ALJ and Appeals Council were based.

■ The court has reviewed and considered the entire record, including the transcript of the administrative proceedings and the briefs submitted by the parties. In reviewing the Secretary's decision, the findings of the Secretary as to any fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g); *Falu v. Secretary of Health and Human Services*, 703 F.2d 24, 28 (1st Cir.1983). Substantial evidence exists where a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support the conclusion drawn. *Rodriguez v. Secretary of Health and Human Services*, 647 F.2d 218, 222 (1st Cir.1981). In addition, the conclusion drawn at the administrative level must be supported by full and detailed findings. *Small v. Califano*, 565 F.2d 797, 801 (1st Cir.1977).

Plaintiff, who was 52 years old at the time of her hearing before the ALJ and possesses a high school education, has previously worked as a traveling insurance and vacuum cleaner sales person, a nutritional aid, companion, waitress, office receptionist, and census taker. Plaintiff alleges an inability to work due to a mental impairment, as well as multiple physical impairments.

The ALJ found that plaintiff suffers from the following medically determinable impairments: (1) status post excision of benign breast lesion; (2) extensive calcification of the abdominal aorta; (3) degenerative arthritis of the cervical, dorsal, and lumbar spine; (4) moderate to severe degenerative arthritis of both knees; (5) moderately severe exogenous depression; and (6) generalized arthritis of both hands. The ALJ determined that plaintiff does not have an impairment or combination of impairments that meet or equal an Appendix I listed impairment and that despite her impairments plaintiff retained the residual functional capacity [RFC] to perform sed-

1. Plaintiff filed previous applications for disability insurance benefits and for SSI on April 25, 1980. Tr. 76–70. Both applications were denied initially and upon reconsideration. Tr. 81, 84. On November 30, 1981 an ALJ determined that plaintiff was not disabled, Tr. 185–96, and on April 21, 1982 the Appeals Counsel affirmed the ALJ, Tr. 198–99. At the hearing on plaintiff's renewed applications the ALJ determined and plaintiff's counsel agreed that the prior adverse decision was res judicata through April 1982, since the plaintiff had not sought judicial review of the prior decision and there appeared to be no basis upon which to reopen the matter. Tr. 22.

entary work, provided plaintiff can alternatively sit and stand at will to relieve her pain. Based on the medical evidence of record and the testimony of an impartial vocational expert [VE], the ALJ concluded that plaintiff is capable of meeting the physical demands of her previous work as an office receptionist. The ALJ also concluded that plaintiff's nonexertional impairment does not impose siginficant limitations on plaintiff's ability to perform her past relevant work and that therefore plaintiff is not disabled within the meaning of the Act. Tr. 17.

Plaintiff does not object to the Secretary's well documented and entirely supportable conclusion that plaintiff retains the RFC to meet the physical demands of her past relevant work as an office receptionist.[2] Rather, plaintiff objects to the Secretary's assessment and evaluation of plaintiff's mental impairment.[3]

The record discloses that since December 1982 plaintiff was seen in consultation with Bruce Saunders, Ph.D., for psychological examination and treatment. Tr. 35. Over the course of these consultations Dr. Saunders administered two Minnesota Multiphasic Personality Inventory [MMPI] tests and two Millon Behavioral Health Inventory [MBHI] tests. Dr. Saunders interpreted the results of the MBHI as suggesting that plaintiff "is an individual who may be viewed as both shy and awkward in social situations" and as presenting a long history of frequent and repeated rejection, resulting in "an overtly restrained cover-up of a deep well of bitterness for others." Tr. 241. Dr. Saunders stated that plaintiff
 is an individual who is inclined to be isolated both from social and familial involvements, and engaging in few active and outgoing behaviors. She is likely to spend much time in quiet rumination and passivity. This avoidance pattern of behavior is well-established and is characteristic of individuals with extremely poor self-image, and consistent failure

and ineffectiveness in terms of coping style. She may be described psychologically as an individual manifesting a suspicious and distancing style, and one who when working with health care personnel will constantly test her physician and/or rehabilitation staff for their sincerity.
Tr. 242. Dr. Saunders concluded that plaintiff is unemployable
 in that she perceives herself as physically handicapped, and therefore for all practical purposes is physically handicapped. Further, it is my opinion that the psychometric evidence I have reviewed suggests her complaints of skeletal muscular difficulty in her low back area, are not psychogenic in nature, and should be reviewed thoroughly by the orthopedic and/or neurological community.
Tr. 243.

At the hearing before the ALJ, Dr. Saunders, testifying on plaintiff's behalf, reiterated his opinion that plaintiff is unemployable. Dr. Saunders testified that when plaintiff appeared for her first consultation she provided "probably the most diffuse unclear description of her disabilities that I had heard in many years from someone who appeared functional." Tr. 31. Dr. Saunders indicated that the various tests and his clinical observations suggest an often confused and disoriented person evidencing thought disorder and inappropriate affect and who is in need of competent medical care and psychotherapeutic intervention. Tr. 34–37. Dr. Saunders characterized plaintiff's condition as moderately severe exogenous depression, which interferes with her ability to understand, carry out and remember simple instructions and which would impair her use of judgment, her ability to respond appropriately to supervisors, co-workers and usual work situations, as well as ability to deal with changes in a routine work environment. Tr. 38, 40–41. Upon inquiry from the ALJ,

2. *See* Tr. at 12–16 (ALJ); Tr. 235–36 (Dr. Parker); Tr. 239–40 (laboratory studies); Tr. 245–46 (Dr. Axelman); Tr. 254–59 (Dr. Irwin); Tr. 300 (Dr. Parker supplemental notes).

3. *See* Memorandum In Support of Plaintiff's Motion For Summary Judgment, at 2.

Dr. Saunders agreed that the limitations imposed by plaintiff's mental condition were "significant" prior to April 1982 and the date on which he first saw the plaintiff, but expressed his opinion, based on the various tests and consultations, that plaintiff's condition has become progressively worse and that she is not capable of performing any kind of work on a regular and continuing basis. Tr. 41.

Plaintiff was examined by Dr. Kamm, a psychiatrist, on February 25, 1983. On mental status exam, plaintiff was cooperative yet appeared irritable and depressed. Memory, retention and recall were intact and there was no evidence of schizophrenia, loose associations, ambivalence, autisms, or inappropriate affect. Plaintiff was anxious and depressed and appeared to be in physical pain. Dr. Kamm's clinical impression was that plaintiff fulfilled the criteria for anxiety and depression. Referring to Dr. Saunders' notes, Dr. Kamm interpreted the notes as suggesting that plaintiff's pain "may be" psychogenic. However, Dr. Kamm concluded that "in any event" plaintiff does suffer from anxiety and depression. Tr. 251–52. In a supplemental questionnaire Dr. Kamm characterized the estimated degree of restriction of plaintiff's daily activities, constriction of interests, and ability to relate to others resulting from her mental condition as "moderate" on a scale of "none" to "severe," and estimated the degree of deterioration in plaintiff's personal habits as "mild." Dr. Kamm notes that plaintiff is capable of managing her own funds. Tr. 253.

In reviewing the reports of doctors Saunders and Kamm, as well as the testimony of Dr. Saunders, the ALJ expressly rejected Dr. Saunders' opinion that plaintiff is unemployable. The ALJ reasoned that Dr. Saunders describes the

claimant's condition as one which has evolved over a long period of time. In spite of this the record shows that claimant has been quite capable of working in the past. The doctor's testimony and report fail to establish any deterioration

in the claimant's overall psychological status since she stopped working. His conclusion is markedly at odds with the findings of Dr. Kamm who has concluded that functionally the claimant is only mild (sic) to moderately impaired. I find that Dr. Kamm's conclusions are entitled to much more weight than are the conclusions of Dr. Saunders, as Dr. Kamm's report sets out the specific objective medical data underlying his conclusions. Tr. 15.

Plaintiff objects to the ALJ's assessment and evaluation of plaintiff's mental impairment on the grounds that the ALJ (1) erred in finding that plaintiff's mental impairment is not severe; (2) erred in rejecting the testimony of Dr. Saunders; (3) improperly evaluated the severity of the limitations imposed by plaintiff's mental impairment; (4) failed to consider plaintiff's non-exertional manipulative impairment; and (5) failed to consider the complete testimony of the VE.

■■ The Secretary's regulations require a sequential evaluation of disability claims. 20 C.F.R. § 404.1520. Under the fourth test the Secretary asks whether "the claimant's impairment prevent[s] him from performing work of the sort he has done in the past." *Goodermote v. Secretary of Health and Human Services*, 690 F.2d 5, 6–7 (1st Cir.1982). *See* 20 C.F.R. § 404.1520(e). Under the fourth test plaintiff bears the initial burden of showing an impairment which renders him unable to return to his former type of employment. *Pritchard v. Secretary of Health and Human Services*, 692 F.2d 198, 201 (1st Cir. 1982). *See also Gonzalez Perez v. Secretary of Health, Education & Welfare* 572 F.2d 886, 887 (1st Cir.1978); *Pelletier v. Secretary of Health, Education & Welfare*, 525 F.2d 158, 160 (1st Cir.1975).

For purposes of the second step in the analysis, *see* 20 C.F.R. § 404.1520(c), there can be no question that plaintiff's mental impairment is "severe," that is, it significantly limits plaintiff's mental ability to perform basic work-related activities. Dr. Saunders' testimony establishes as much.

*See* Tr. at 38. 40–41. However, a determination that an impairment is "severe" for purposes of the second sequential severity test has no bearing on the proper application of the fourth test. The fourth test *assumes* the presence of a severe impairment and asks whether, in light of the severe impairment, the claimant retains the RFC to meet the physical and mental demands of his or her past relevant work. *See Goodermote v. Secretary of Health and Human Services*, 690 F.2d at 6. *Cf. Pritchard v. Schweiker*, 692 F.2d at 201 [fact that ALJ found that plaintiff had significant impairment does not contradict conclusion that plaintiff could perform his past relevant work].

The ALJ found that plaintiff's depression is only moderately severe. This does not mean that plaintiff's ability to perform basic work activities is not limited. The ALJ's conclusion simply means that plaintiff's depression does not functionally disable plaintiff from meeting the mental demands of her past work as a receptionist. To the extent plaintiff argues that her depression is so severe as to prevent her performing *any* substantial gainful activity, her contention is not supported by the record.

 Although the use of such terms as "mild" and "moderate" in connection with a particular medical finding does not necessarily mean only a "mild" or "moderate" impairment, *cf. Sitar v. Schweiker*, 671 F.2d 19, 21 (1st Cir.1982) ["moderate depression does not necessarily mean only moderate impairment"], the record supports the ALJ's determination that plaintiff's depression is not disabling.

For a mental condition to be disabling, there must be a "resulting persistence of marked restriction of daily activities and constriction of interests and deterioration in personal habits and seriously impaired ability to relate to other people." 20 C.F.R. Part 404, Subpart P, Appendix I § 12.04, *quoted in Lopez v. Secretary of Health and Human Services*, 747 F.2d 37, 41 (1st Cir.1984). Putting to one side Dr. Saunders' conclusion that plaintiff's mental condition has become progressively worse, plaintiff does not dispute the ALJ's finding that plaintiff has worked with some degree of mental impairment. It is clear from plaintiff's testimony that she was able adequately to perform the tasks required of her former jobs, that she got along well with her supervisors and co-workers and that she left her various jobs for personal or physical reasons and not for any inability to cope. *See* Tr. at 43–47, 49. Moreover, plaintiff testified that since 1982 she has been quite capable to taking care of herself. She lives on her own, undertakes household chores and grocery shopping on a regular basis, drives, and regularly entertains visitors and conducts social contacts over the telephone. *See* Tr. 52–54, 58, 62. Plaintiff never mentioned being depressed at the hearing and, as the ALJ observed, the only psychological manifestations suggested by plaintiff's testimony is that she occasionally loses her temper and throws things. Tr. 16. *See* Tr., at 64.

In reaching the conclusion that the nonexertional limitations imposed by plaintiff's mental impairment do not significantly limit her ability to perform her past work, the ALJ accepted Dr. Kamm's characterization of plaintiff's functional limitations as falling within the mild to moderate range, and rejected Dr. Saunders' conclusion that plaintiff is unemployable. It is well settled that it is the Secretary's function to determine which professionals to credit, *Diaz v. Secretary of Health and Human Services*, 746 F.2d 921, 924 (1st Cir.1984), and that the court will not substitute its judgment for that of the Secretary in resolving conflicts in the evidence, *Sitar v. Schweiker*, 671 F.2d at 22.

Plaintiff argues that the psychological report and testimony of Dr. Saunders should have been accorded greater weight than the psychiatric evaluation submitted by Dr. Kamm. Plaintiff contends that, whereas Dr. Kamm's report contains only a brief clinical impression, Dr. Saunders' report and testimonial presentation is buttressed by two MMPI's, two MBHI's and

between 15 and 20 hours of personal consultation.

However, contrary to plaintiff's assertions, Dr. Saunders' conclusions are neither overwhelming nor uncontroverted. The ALJ did not totally reject Dr. Saunders' findings. In fact the ALJ accepted Dr. Saunders' diagnosis of moderately severe exogenous depression. What the ALJ expressly rejected was Dr. Saunders' opinion that plaintiff is disabled. In reaching this conclusion the ALJ was entitled to rely on Dr. Kamm's clinical impression and RFC assessment, as well as the testimony of the plaintiff. That Dr. Kamm's assessment is based on his clinical impression does not render his findings any less worthy of consideration than Dr. Saunders' interpretation of the psychological tests he performed, or as not constituting the requisite medical findings contemplated by the regulations. *See* 20 C.F.R. § 404.1528(b). *Cf. Bucklin v. Heckler,* No. 84–0122–B (D.Me. January 8, 1985) [medical advisor's diagnostic impression based upon psychiatric reports constitutes requisite medical findings]. Moreover, the fact that Dr. Kamm interpreted Dr. Saunders' report as suggesting that plaintiff's pain "may be" psychogenic in origin does not demonstrate that Dr. Kamm's report "was rather haphazard."[4] Dr. Kamm's report states only that Dr. Saunders' "notes" suggest a psychogenic basis for plaintiff's pain; *not* that Dr. Saunders' *interpretation* of the various tests suggests a psychogenic overlay. Tr. 52. Clearly, Dr. Kamm is entitled to interpret Dr. Saunders' test results differently.

Nor is Dr. Saunders' opinion—that plaintiff is disabled—binding on the ALJ. *See* 20 C.F.R. § 404.1527. Dr. Saunders bases this conclusion on his interpretation of various tests, which, he believed, showed that plaintiff's condition had become progressively worse. The ALJ rejected this conclusion on the ground that Dr. Saunders' "testimony and report fail to establish any deterioration in the plaintiff's overall psychological status." Tr. 15. To be sure, Dr. Saunders did testify that plaintiff's mental condition has become worse, but aside from citing the second MMPI administered in December 1983 he does not really indicate what specifically in the test results demonstrated a progressive worsening in plaintiff's condition. Tr. 34, 41. Nevertheless, it is readily apparent that the primary reason the ALJ rejected Dr. Saunders' opinion of disability is that Dr. Kamm's evaluation, which was also conducted in 1983, concludes that the functional limitations imposed by plaintiff's mental condition are only mild to moderate and, as such, are not disabling.

Although the ALJ properly resolved the conflict between doctors Saunders and Kamm in favor of Dr. Kamm, the ALJ's otherwise well reasoned analysis breaks down in his evaluation of plaintiff's ability to meet the mental demands of her past work. Though not required to do so the ALJ based his finding that plaintiff is able to perform her past relevant work on the testimony of the VE. Having elected to do so, and in order for the VE's testimony to be relevant on this issue, the ALJ was required to pose to the VE a hypothetical question which, at a minimum, must correspond

> to [the] conclusions that are supported by the outputs from the medical authorities. To guarantee that correspondence, the Administrative Law Judge must both clarify the outputs (deciding what testimony will be credited and resolving ambiguities), and accurately transmit the clarified output to the expert in the form of assumptions.

*Arocho v. Secretary of Health and Human Services,* 670 F.2d 374, 375 (1st Cir. 1982).

■ After eliciting from the VE the exertional and skill requirements of plaintiff's previous jobs the ALJ asked whether, assuming the RFC for sedentary work but

---

**4.** The fact that Dr. Kamm reviewed Dr. Saunders' notes, as well as other relevant reports, suggests that Dr. Kamm's assessment was not based on a quick clinical observation, but on all of the relevant psychiatric and psychological evidence.

with the ability to sit and stand at will, and assuming further various physical limitations, plaintiff is capable of performing her past job as a receptionist. Tr. 69. Missing from the ALJ's hypothetical is any mention of plaintiff's mental condition. Yet, if supported by the evidence,[5] the ALJ was required to include in the hypothetical any limitations imposed by plaintiff's mental condition which would affect her ability to meet the mental demands of an office receptionist. See 20 C.F.R. §§ 404.1520(e), 404.1545(c). Although the ALJ found that plaintiff's nonexertional limitations would not significantly limit her ability to perform her past job as a receptionist,[6] Tr. 17, the ALJ fails to cite any supporting evidence. Certainly it is fair to assume that an individual suffering from a well documented mental condition which moderately restricts her activities, interests, and ability to relate to others, and which is no doubt compounded by physical limitations,[7] would encounter some difficulty meeting the day in and day out mental demands of any job. In her description of the exertional and skill requirements of plaintiff's previous job as a receptionist the VE does not indicate what the mental demands of the job of office receptionist, generally, are. See Tr. at 68. And although plaintiff described her receptionist job as involving answering the telephone and taking messages, and that there really "wasn't much to do," Tr. 47, there is nothing in the record indicating that receptionist jobs require greater or lesser mental demands than those suggested by plaintiff's testimony. In fact the VE characterized plaintiff's receptionist job as "semi-skilled," the definition of which, see 20 C.F.R. § 404.1568(b), strongly suggests a mental acuity greater than that contained in plaintiff's description of her job as a receptionist.

Where, as here, such elastic qualifiers as "moderate" and "significantly" figure prominently in the ALJ's ultimate conclusion it is manifestly reasonable to require the Secretary to explain with greater particularity how the plaintiff is capable of meeting the mental demands of her previous type of work.[8] It would have been a simple matter to explore this issue with the VE. Having failed to do so the case must be remanded.

On remand the Secretary shall give full consideration to the question of whether plaintiff retains the ability to meet the mental demands of her past type of work. Such consideration might include, for example, the submission of the medical

5. Although plaintiff testified that because of arthritis in her hands she often drops knitting needles, cigarettes and coffee cups, Dr. Irwin observed that despite plaintiff's allegations that she is unable to grasp with either hand "this is manifestly an incorrect finding" and that plaintiff uses both hands "quite well." Tr. 255. Therefore, the ALJ did not err in not considering plaintiff's asserted manipulative impairment. Similarly, the ALJ did not fail to consider the testimony of the VE that assuming plaintiff displayed inappropriate behavior there are no jobs available for someone evidencing such behavior. See Tr. at 71–72. Although Dr. Saunders observed that plaintiff displays inappropriate behavior, see Tr. at 35–36, Dr. Kamm specifically found no evidence of inappropriate affect, Tr. 252.

6. Even though the ALJ found that plaintiff had worked with some degree of mental impairment, this determination does not relieve the ALJ of his responsibility to assess fully plaintiff's present ability to meet the mental demands of her past work in relation to the mental demands actually required of office receptionists generally. See Strittmatter v. Schweiker, 729 F.2d 507, 509 (7th Cir.1984) [once a severe impairment has been found, Secretary must inquire into physical and mental demands of plaintiff's past work in relation to present physical and mental capacities]. Here, the ALJ makes no attempt to correlate Dr. Kamm's assessment with the mental demands required by plaintiff's past type of work as a receptionist.

7. Because the Secretary is required to consider the cumulative effect of a claimant's impairments, see Arocho v. Secretary of Health and Human Services, 670 F.2d at 375, the absence of any mention of plaintiff's mental impairment to the VE becomes more significant.

8. This is not a case where the plaintiff failed to present any evidence that she would not be able to meet the physical and mental demands of her former work. Compare Pritchard v. Secretary of Health and Human Services, supra. Through the testimony of Dr. Saunders and cross-examination of the VE the plaintiff made every effort to present her case on this issue.

record and interrogatories to a vocational expert, or even a supplemental hearing. Should the Secretary require additional evidence or proceed with further administrative action plaintiff is to be afforded an opportunity to be heard.

Accordingly, it is hereby *ORDERED* that the decision of the Secretary is *VACATED* and the cause is *REMANDED* to the Secretary for further proceedings in accordance herewith.