**Antonio FEDOCE, Plaintiff,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant.**

Civ. A. No. 84–2521–C.

United States District Court,
D. Massachusetts.

March 12, 1986.

Jeffrey Petrucelly, Petrucelly & Nadler, Boston, Mass., for plaintiff.

Asst. U.S. Atty. Frederick E. Dashiell, for defendant.

MEMORANDUM

CAFFREY, Chief Judge.

The plaintiff, Antonio Fedoce, brought this action under Section 205(g) of the So-

cial Security Act, as amended, 42 U.S.C. § 405(g), seeking reversal of the Secretary's adverse finding on the plaintiff's claim that he is disabled within the meaning of the Social Security Act. In the alternative, the plaintiff requests a remand to the Secretary on the grounds that there exists new medical evidence of the plaintiff's disability.

The matter is now before the Court on the plaintiff's motion for summary judgment and/or remand and the defendant Secretary's motion for an order affirming the decision of the Secretary. For the reasons set forth below, I rule that the Secretary's finding that the plaintiff is not disabled within the meaning of the Social Security Act is not supported by substantial evidence and, accordingly, the plaintiff's motion for summary judgment should be granted, and the Secretary's motion for affirmance should be denied.

The plaintiff filed an application for a period of disability and for disability benefits at the age of 46 on March 21, 1983, alleging an inability to work since June 13, 1982 when he injured his back while lifting a heavy wood plank at work. The application was denied initially and on reconsideration by the Social Security Administration. The Administrative Law Judge (the "ALJ"), before whom the plaintiff and his attorney appeared at a hearing on December 5, 1983, considered the case *de novo*, and, on February 14, 1984, found that the plaintiff was not under a disability within the meaning of the Social Security Act at any time through that date. On June 14, 1984 the Appeals Council approved the Secretary's decision and informed the plaintiff that the ALJ's decision stood as the final decision of the Secretary, subject to judicial review. The plaintiff then initiated the instant action in this Court.

Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), provides, *inter alia*, that "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing," and that "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive."

The Social Security Act defines disability in both Sections 216(i)(1) and 223(d)(1), 42 U.S.C. §§ 416(i)(1) and 423(d)(1), as:

> [the] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months....

The Social Security Administration Regulations, 20 C.F.R. §§ 404.1520 and 416.920, provide a five-step procedure for evaluating disability:

> First, is the claimant currently employed? If he is, the claimant is automatically considered not disabled.

> Second, does the claimant have a severe impairment? A 'severe impairment' means an impairment 'which significantly limits his or her physical or mental capacity to perform basic work-related functions.' [See 20 C.F.R. §§ 404.1521 and 404.921] If the claimant does not have an impairment of at least this degree of severity, he is automatically considered not disabled.

> Third, does the claimant have an impairment equivalent to a specific list of impairments contained in the regulations' Appendix I? If the claimant has an impairment of so serious a degree of severity, the claimant is automatically found disabled.

> These first three tests are 'threshhold' tests. If the claimant is working or has the physical or mental capacity to perform 'basic work-related functions,' he is automatically considered not disabled. If he has an Appendix 1-type impairment he is automatically considered disabled. In either case, his claim is determined at the 'threshhold.' If, however, his ability to perform basic work-related functions is impaired significantly (test 2) but there is no 'Appendix 1' impairment (test 3),

the SSA goes on to ask the fourth question:

Fourth, does the claimant's impairment prevent him from performing work of the sort he has done in the past? If not, he is not disabled. If so, the agency asks the fifth question.

Fifth, does the claimant's impairment prevent him from performing other work of the sort found in the economy? If so, he is disabled; if not, he is not disabled.

*See Goodermote v. Secretary of Health & Human Services,* 690 F.2d 5, 6–7 (1st Cir. 1982).

The plaintiff alleged physical disability caused primarily by degenerative osteoarthritis in both hips and a ruptured invertebral disc in his back. The plaintiff's back problems began on June 13, 1982 when he experienced severe pain in his back while attempting to pick up a heavy wood plank on his construction job. In her decision the ALJ found, with respect to step one of the disability evaluation process, that the plaintiff had not worked since June 13, 1982 and, with respect to step two, that the plaintiff's back injury was a "severe" impairment within the meaning of the Regulations. *See* 20 C.F.R. §§ 404.1520(c) and 404.1521. Thus the ALJ found that plaintiff was not automatically not disabled by the tests of steps one and two. The ALJ next found, however, that the plaintiff's back impairment, whether considered alone or in conjunction with his other physical problems, was not a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix I, or medically equivalent to a listed impairment and that plaintiff was not automatically disabled under the step three test. Continuing the disability evaluation precedure, the ALJ found, with respect to step four, that the plaintiff was able to do work at the "light" exertional level and, therefore, was able to return to his past relevant work as a shoe worker.[1]

The plaintiff seeks reversal of the ALJ's findings on the grounds that 1) he suffered from two different impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix I and, therefore, was automatically entitled to benefits; and 2) even if he did not suffer from a listed impairment, the ALJ's finding that he could perform "light work," *See* 20 C.F.R. § 404.1567(b), was not supported by substantial evidence. For the reasons set forth below, I rule that the Secretary's finding that the plaintiff's severe back impairment was not an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix I, is unsupported by substantial evidence in the record. Since a claimant with a listed impairment automatically is considered disabled, it is unnecessary to consider whether there was substantial evidence in the record to support the Secretary's finding that the plaintiff was capable of performing "light work."

The plaintiff came to the United States from Italy in 1964 and from that time until June 13, 1982, the date of his back injury, worked primarily as a construction worker. The plaintiff began to develop pain in his hips and legs sometime in 1981. An x-ray taken on September 4, 1981 revealed a narrowing of both hip joint spaces with degenerative spurring and bony ebrunation of the opposing joint surfaces, findings characteristic of degenerative osteoarthritis. Dr. Ronald Geiger, who evaluated and treated the plaintiff's hip problems throughout 1982 and 1983, consistently stated in reports during that period that the plaintiff was suffering from advanced degenerative osteoarthritis and that, unless he received hip replacements, the plaintiff would remain "totally disabled" from performing even sedentary work. Dr. Geiger's reports are replete with references to the extremely painful and disabling nature of the plaintiff's hip impairment. Dr. Ovadia, who evaluated the plaintiff on March 24, 1982 on behalf of the Massachusetts Rehabilitation Commission, found that the plaintiff suffered from a "moderate stage of osteoarthritis" and opined that the plain-

---

1. The plaintiff testified that he worked in a shoe factory for a couple of months shortly after coming to the United States from Italy in 1964.

tiff's capacity to do physical work had "decreased remarkably."

The plaintiff maintains that the osteoarthritis in his hips qualifies as an impairment under 20 C.F.R. Part 404, Subpart P, Appendix I, § 1.03(B). The Court need not decide whether the plaintiff's hip problems meet the requirements of that section, however, because the Court rules that there is not substantial evidence in the record to support the Secretary's finding that the plaintiff's back impairment does not qualify as a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1, § 105(C), which provides:

. . . .

C. Other vertebrogenic disorders (e.g., herniated nucleus pulposus, spinal stenosis) with the following persisting for at least 3 months despite prescribed therapy and expected to last 12 months. With both 1 and 2:

1. Pain, muscle spasm, and significant limitation of motion in the spine; and

2. Appropriate radicular distribution of significant motor loss with muscle weakness and sensory and reflex loss.

There is no substantial evidence in the record tending to support the ALJ's finding that plaintiff did not have a listed impairment. The evidence in the record clearly shows that the plaintiff's back impairment meets the requirements of Section 105(C)(1) and (2). At the hearing before the ALJ, the plaintiff testified that because of his back injury he has pain in his back all the time, that the pain awakens him at least two or three times a night, and that, also because of his back injury, he cannot stay still for more than ten minutes, walk for more than three or four blocks, drive for long distances, take the garbage out, shovel snow, put his socks and shoes on without pain, or walk up and down stairs without trouble.

The record in this case contains uncontroverted and overwhelming evidence that corroborates the plaintiff's claims of back pain. After injuring his back, the plaintiff first saw Dr. James Burns who diagnosed low back strain and instructed the plaintiff to apply heat to his back and rest at home. Heat and rest, however, did not relieve the pain in the plaintiff's back, and he was unable to return to work. Dr. Joseph Dorsey, the plaintiff's primary treating physician for his back injury, first evaluated the plaintiff in July of 1982. Dr. Dorsey's report dated July 27, 1982 states that his examination of the plaintiff's back revealed a "loss of the lumbar curve [and] spasm of the back muscles," that the plaintiff could only bend forward to about 30 degrees, straight leg raise his right leg to 20 degrees and his left leg to 30 degrees, that the plaintiff's "knee jerk" was "absent on the left, [but] present on the right", and that the plaintiff's "ankle jerk [was] grossly diminished on the right, and present on the left."

In a report dated October 4, 1982, Dr. Dorsey stated that "[e]xamination of the back shows loss of the lumbar curve, and again spasm of the back muscles, with restriction of back bending in all directions, tenderness to percussion over the lower lumbar spine, [and] . . . reflexes . . . the same as those noted on July 27th." The report also stated that the plaintiff "is disabled at this time from all forms of work that involve twisting, turning, bending, lifting."

A lumbar myelogram of the plaintiff's back, taken on February 2, 1983 at Sancta Maria Hospital, revealed a ruptured invertebral disc at L4–5. In a report dated March 14, 1983, Dr. Dorsey noted that the myelogram indicated a ruptured invertebral disc, that the plaintiff continued to experience spasm of the back muscles, that the plaintiff's back bending was restricted in all directions, and that the plaintiff's deep reflexes were the same as Dr. Dorsey had noted in his report on July 27, 1982. On June 1, 1983, almost a full year after the plaintiff's injury, Dr. Dorsey noted that the plaintiff's condition was unchanged, that "he has slowness in motion, using a cane in his right hand, with loss of the lumbar curve, spasm of the back muscles, and tenderness to percussion over the lum-

bar spine," and that the plaintiff's reflexes continued to be impaired.

Dr. Dorsey's medical evaluations and the report of the myelogram that revealed a ruptured invertebral disc at L4–5 strongly corroborate the plaintiff's testimony about the disabling and painful nature of his back injury. The record shows that, after the hearing before the ALJ on November 14, 1984, the plaintiff underwent surgery to remove the ruptured invertebral disc in his back. On January 11, 1985 Dr. Dorsey stated that, in his opinion, the plaintiff was "totally disabled ... and in all probability ... will never be able to return to work."

The Secretary argues that Dr. Burn's diagnosis of low back strain and the report of Dr. Ovadia, dated March 24, 1982, "clearly indicate" that the plaintiff's back impairment does not satisfy the requirements of 20 C.F.R. Part 404, Subpart P, Appendix I, § 1.05(C)(1) and (2). This claim is refuted by the medical record which shows plaintiff had a ruptured disc which fact totally rebuts Dr. Burns' low back strain theory.

For the following reasons, the Court finds that the Secretary's argument is without merit. First, Dr. Burn's diagnosis [2] that the plaintiff suffered from low back strain must be viewed in light of the record as a whole. *Rodriguez v. Secretary of Health and Human Services*, 647 F.2d 218, 222 (1st Cir.1981). With that principle in mind, the myelogram done at Sancta Maria Hospital, which revealed a ruptured invertebral disc, and Dr. Dorsey's reports spanning a two and one-half year period, which consistently related the disabling and painful nature of the plaintiff's back injury, renders Dr. Burn's diagnosis of low back strain a-factual. Second, Dr. Ovadia examined the plaintiff sometime prior to March 24, 1982, the date of Dr. Ovadia's report, and March 24, 1982, of course, preceded June 13, 1982, the date the plaintiff's back was injured at work. Dr. Ovadia's report, therefore, is irrelevant to whether the plaintiff's back impairment satisfies the requirements of 20 C.F.R. Part 404, Subpart P, Appendix I, § 1.05(c)(1) and (2).

Order accordingly.

### ORDER

In accordance with memorandum filed this date, it is ORDERED:

1. The defendant's motion for an order affirming the decision of the Secretary is denied.

2. The plaintiff's motion for summary judgment is granted and the motion for remand is denied.

---

**2.** The record, the Court notes, does not even contain a report by Dr. Burns. The only evidence in the record of Dr. Burn's diagnosis is a statement by Dr. Dorsey in Dr. Dorsey's July 27, 1982 report.