**Hector SANCHEZ, Plaintiff,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant.**

**Civ. A. No. 84–0024–F.**

United States District Court,
D. Massachusetts.

Jan. 21, 1988.

---

David O. Scott, Springfield, Mass., for plaintiff.

Henry L. Rigali, Asst. U.S. Atty., Palmer, Mass., for defendant.

## MEMORANDUM AND ORDER

FREEDMAN, Chief Judge.

Claimant Hector Sanchez filed an application for disability insurance benefits and supplemental security income on April 12, 1982 and April 9, 1982, respectively. The Social Security Administration denied the claims. On October 27, 1983, an Administrative Law Judge ("ALJ") issued an opinion affirming the Administration's decision and, on November 22, 1983, the Appeals Council adopted the ALJ's decision. This became the Secretary's final decision and the case is now ripe for review in this Court. See 42 U.S.C. § 405(g).

Neither party objects to the ALJ's findings of fact, and thus they are adopted herein. See Record ("Rec.") at 10–15. Plaintiff objects to the Secretary's decision based on the ALJ's evaluation of evidence suggesting the claimant may have mental disorders rendering him disabled under the Secretary's regulations.

The Secretary is obligated to review disability claims by sequentially applying a five-part test. See 20 C.F.R. § 404.1520; Goodermote v. Secretary of Health and Human Services, 690 F.2d 5, 6–8 (1st Cir. 1982). According to the third step of this analysis, if a claimant has an impairment equivalent to one listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is automatically disabled and entitled to disability benefits. Regarding claims of mental disorders, the Secretary is bound to apply factors set forth in 20 C.F.R. § 416.920(a) and in the mental disorder section of Appendix 1. See 20 C.F.R. Part 404, Subpart P, Appendix 1, §§ 12.00–12.05 (hereinafter "Appendix 1").

■ Plaintiff argues there is no substantial evidence supporting the Secretary's decision that Sanchez has no mental disorders. Specifically, plaintiff maintains he suffers from chronic brain syndrome, functional psychotic disorders, functional nonpsychotic disorders and mental retardation. Each one of these disorders, by itself, is per se a disability under the regulations. This Court will limit its discussion to the retardation claim, as it will reverse the Secretary's decision.

To be per se disabled due to mental retardation, the Secretary's regulations require a showing of:

B. A valid verbal, performance, or full scale I.Q. of 59 or less; or C. A valid verbal, performance, or full scale I.Q. of 60 to 69 inclusive, and a physical or other mental impairment imposing additional and significant work-related limitation of function....

Appendix 1, § 12.05. Additionally, as plaintiff points out, where more than one I.Q. is derived from a test, regulations re-

quire the Secretary to use the lowest score in the disability analysis. See Appendix 1 at § 12.00(D).

Upon review of the record, the Court notes that Sanchez twice took an exam, referred to as the E.I.W.A. This test is the spanish version of the Wechsler Adult Intelligence Scale ("W.A.I.S."), which is specifically listed by the Secretary as the recommended test for determining intelligence quotients. *See* Appendix 1 at § 12.00(D). On July 19, 1982, at the behest of the Social Security Administration, Dr. Patricio Dhimitri administered the E.I.W.A. to Sanchez. Dr. Dhimitri analyzed the results and reported Sanchez' I.Q. as verbal 60, performance 52, full scale 54. Rec. at 252. On September 1, 1983 Dr. Vazquez Nuttall administered the same test to Sanchez, reporting his I.Q. as verbal 69, performance 87, full scale 76. Rec. at 112–118. However, the record makes it clear that at the disability hearing before the ALJ, Dr. Nuttall testified that this E.I.W.A. score significantly overestimates Sanchez' mental ability in the United States because it bases its comparison solely on residents of Puerto Rico. *Id.* Dr. Nuttall concluded that "it is likely in the context of an American society, Mr. Sanchez is functioning in the mild to moderate retarded range." Rec. at 280. Nuttall continued that, in order to accurately reflect his intelligence, Sanchez' score should be normed against the United States population which is a more educated society. Under this norm, Nuttall reported Sanchez' I.Q. in the 52–72 range which would render Sanchez mentally retarded. Dr. Dhimitri also used this United States norm as the basis of his conclusions.

The Secretary chose not to apply the United States norm and used the E.I.W.A., Puerto Rico standard-based score in evaluating Sanchez' mental abilities. This was error. Mr. Sanchez has been in the United States for over twelve years. It is unreasonable to compare his mental abilities with persons living in Puerto Rico, as Dr. Nuttall convincingly points out in her detailed

report. Rec. at 274–80. As Dr. Dhimitri testified, converting the E.I.W.A. scores to the United States population norms provides much more accurate diagnostic results. Rec. at 252.

In rejecting application of the United States norms, the ALJ stated that Sanchez was not disabled because in defining retardation, the regulations state it is a "lifelong condition characterized by below average intellectual *endowment* as measured by well-standardized intelligence (I.Q.) tests...." Rec. at 14 (emphasis in original). Apparently, the ALJ found an important distinction between lack of intellectual endowment and lack of cultural and educational endowment. Additionally, the Appeals Council, in affirming this decision, wrote that use of norms measured against residents of Puerto Rico to Spanish-speaking residents in the continental United States is "consistent with the expert opinions of physicians designated by the Secretary to evaluate the medical evidence of record." Rec. at 4.

This Court finds that both the ALJ and Appeals Council erred. Not only does use of Puerto Rico norms for someone living in the United States for over twelve years not make sense, but one of the Secretary's self-professed experts in this case, Dr. Dhimitri, testified that the Puerto Rico norms were inaccurate and should not be used in evaluating Mr. Sanchez.[1] Also, the Court notes that the ALJ's distinction between intellectual versus cultural endowment appears nowhere in the regulation defining mental retardation and that Dr. Nuttall testified there is no distinction between mental retardation and low I.Q. scoring due to poor education and social deprivation. *See* Appendix 1, § 12.05; Rec. at 106–18. Indeed, regulation 12.05 makes it clear that if one has an I.Q., determined through standardized tests, between 50–59, then the claimant is per se disabled; and if the I.Q. is between 60–69, accompanied by other physical or mental impairments, the

---

1. The Court notes that there is a report filed by a Dr. Rosenburg stating in one line that use of the United States population norm in evaluating the E.I.W.A. test is inappropriate, yet in the next sentence, he recognized the dubiousness of this result. Rec. at 205. Moreover, Dr. Rosenburg found claimant "moderately-severely impaired," even if the higher I.Q. results were used.

claimant is again per se disabled. Furthermore, both doctors who tested Sanchez for mental disorders found him retarded using I.Q. tests approved by the Secretary.

This Court finds that claimant's I.Q. renders him disabled under regulation 12.-05 of Appendix 1. The record reflects Sanchez' I.Q. in the 50–59 level using United States norms. However, even if claimant's I.Q. is believed to be in the 60–69 range using Puerto Rico-based norms, there is ample evidence in the record of additional factors imposing significant work-related limitations of function also rendering claimant disabled under the regulations.

Accordingly, this Court finds that no substantial evidence supports the Secretary decision and, further, the regulations direct a finding that the claimant is disabled. Therefore, no remand is necessary in this case. The Secretary is directed to enter an order finding Hector Sanchez disabled, and to compute past-due benefits accordingly.[2]

It is So Ordered.

2. Claimant's counsel in this case is to be commended for the services he performed in representing the claimant. To promptly receive attorney's fees for work performed in this Court, counsel should wait until the Secretary has computed claimant's past-due benefits and then file a fee's application in this Court pursuant to 42 U.S.C. § 406 and, possibly, the Equal Access to Justice Act. Counsel should apply directly to the Social Security Administration for services rendered before the agency.