Sullivan v. SSA                    CV-96-378-SD 08/28/97

**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**


Dennis Sullivan


   v.                                   Civil No. 96-378-SD


Shirley S. Chater, Commissioner
 of Social Security Administration


## O R D E R


Pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), plaintiff Dennis Sullivan seeks judicial review of a final decision of the Secretary of Health and Human Services denying his claims for disability insurance benefits. Presently before the court are (1) plaintiff's motion to reverse the Secretary's decision and (2) defendant's motion to affirm same.


## Background

Claimant Dennis Sullivan is a 45-year-old male who filed an application for disability insurance benefits in December 1993 claiming inability to engage in gainful employment due to physical and mental impairments. His claim was denied initially and upon reconsideration. Claimant was then granted a hearing before an Administrative Law Judge (ALJ), at which he challenged the denial of benefits. The ALJ also denied benefits on the

ground that claimant was not disabled within the meaning of the Social Security Act.

## Discussion

The ultimate question in this case is whether Sullivan is disabled within the meaning of 42 U.S.C. § 423(d), which defines "disability" as

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . [lasting at least a year and] of such severity that [the claimant] . . . is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him or whether he would be hired if he applied for such work.

The ALJ found that Sullivan was not disabled. On review, this finding is entitled to deference as long as it is supported by substantial evidence, 42 U.S.C. § 405(g), which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). However, "[d]eference is not an absolute rule." Thompson v. Sullivan, 987 F.2d 1482, 1490 (10th Cir. 1993). For the following reasons, this court finds that the ALJ's finding is not supported by substantial evidence.

The determination of whether an applicant is disabled

2

generally consists of a multi-step analysis that focuses first on the nature and severity of claimant's impairment and second on the availability of suitable work in light of the impairment. Goodermote v. Secretary of Health and Human Servs., 690 F.2d 5, 6-7 (1st Cir. 1982). However, Appendix 1 of the Social Security regulations contains a specific list of impairments that are of a degree of severity to be presumptively disabling without inquiry into the availability of suitable work. Id. Appendix 1 contains listings of mental disorders that are "so constructed that an individual meeting the criteria cannot reasonably be expected to engage in gainful work activity." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00 Mental Disorders (1997). One of the categories of mental disorder listings is Affective Disorders, 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.04, which are "[c]haracterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation." In order to qualify as having a Listing 12.04 disorder, a claimant must satisfy two sets of requirements.

The "A." requirements are satisfied by:

> Medically documented persistence, either continuous or intermittent, of one of the following:
> 1. Depressive syndrome characterized by at least four of the following:
> a. Anhedonia or pervasive loss of interest

3

in almost all activities; or
  b.  Appetite disturbance with change in weight; or
  c.  Sleep disturbance; or
  d.  Psychomotor agitation or retardation; or
  e.  Decreased energy; or
  f.  Feelings of guilt or worthlessness; or
  g.  Difficulty concentrating or thinking; or
  h.  Thoughts of suicide; or
  i.  Hallucinations, delusions, or paranoid thinking; or
 2.  Manic syndrome characterized by at lest three of the following:
  a.  Hyperactivity; or
  b.  Pressure of speech; or
  c.  Flight of ideas; or
  d.  Inflated self-esteem; or
  e.  Decreased need for sleep; or
  f.  Easy distractability; or
  g.  Involvement in activities that have a high probability of painful consequences which are not recognized; or
  h.  Hallucinations, delusions or paranoid thinking; or
 3.  Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes). . . .

Id.

The "B." requirements are satisfied when those medically documented symptoms result in at least two of the following:

 1.  Marked restriction of activities of daily living; or
 2.  Marked difficulties in maintaining social functioning; or
 3.  Deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere); or
 4.  Repeated episodes of deterioration or decompensation in work or work-like settings which

4

cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (which may include deterioration of adaptive behaviors).

Id.

The ALJ found that Sullivan did not have a presumptively disabling Affective Disorder as defined under Listing 12.04 because Sullivan's medically documented symptoms did not satisfy the "B." requirements. In reaching this conclusion, the ALJ relied on a July 1994 report by Dr. James J. Adams, an examining physician to whom claimant was referred by a Disability Claims Adjudicator. According to the ALJ, Dr. Adams "found the claimant to have good attention and concentration skills, attention to his activities of daily living and appropriate social functions within his own family which do not rise to the levels of severity required by Listing 12.04." Tr. 24.

The ALJ's finding that Sullivan does not meet the "B." requirements for Listing 12.04 is not supported by substantial evidence. First, claimant points to a mountain of evidence from doctors' reports in the record which support the conclusion that Sullivan does satisfy the "B." requirements, contrary to the ALJ's findings. Plaintiff's Memorandum in Support of Motion to Reverse at 5-7. Generally, the sole question on appeal is whether there is substantial evidence to support the ALJ's conclusion, not whether there is evidence of the opposite

5

conclusion, and "resolution of the conflict within the medical evidence in the present record is a matter for the Secretary to determine." Lizotte v. Secretary of Health and Human Services, 654 F.2d 127, 130 (1st Cir. 1981). However, in this case, the evidence supporting the conclusion that Sullivan does satisfy the "B." requirements overshadows the slim reed of evidence supporting the ALJ's conclusion. In support of reversal, claimant cites several medical reports from physicians who have treated him for his mental impairment since approximately 1982. These reports appear consistent in their evaluation of claimant's mental impairment and support the conclusion that he satisfies the "B." requirements. These reports were on the record, and "Social Security regulations require the Secretary to evaluate every medical opinion received." Sapier v. Secretary of Health & Human Servs., No. 94-352-SD, slip op. at 11 (D.N.H. May 11, 1995) (citing 20 C.F.R. § 404.1527(d) (1994)). In addition, the reports were prepared by treating physicians, and the Social Security regulations require the Secretary to give more weight to a claimant's treating sources

> since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairments and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

6

20 C.F.R. § 404.1527 (1997).  Despite this, the ALJ did not even address these reports, but instead was content to rely on one report prepared by Dr. Adams, who was commissioned by a Disability Claims Adjudicator to examine claimant.  Since the ALJ failed to consider a consistent body of medical reports from claimant's treating physicians, as was required under 20 C.F.R. § 404.1527, this court finds that the ALJ's conclusion is not supported by substantial evidence.

In addition, the ALJ misinterpreted the one medical report he chose to consider--that of Dr. Adams--which, when properly interpreted, does not support the ALJ's conclusions.  The ALJ claimed that Dr. Adams found the claimant to have attention to his activities of daily living.  The Regulations provide,

> *Activities of daily living* include adaptive activities such as cleaning, shopping, cooking, taking public transportation . . . .

20 C.F.R. Pt. 404. Subpt. P, App. 1, 12.00 Mental Disorders.  The only statement from Dr. Adams' report that relates to activities of daily living notes that claimant "is able to drive and shop, but does so when there is not likely to be a crowd at the grocery store."  Tr. at 990.  This statement hardly reflects an affirmative finding by Dr. Adams that Sullivan has attention to activities of daily living.

Second, the ALJ claims that Dr. Adams found Sullivan to have

7

good attention and concentration skills. The Regulations state,

> Concentration, persistence and pace refer to the ability to sustain focused attention sufficiently long to permit the timely completion of tasks commonly found in work settings. In activities of daily living, concentration may be reflected in terms of ability to complete tasks in everyday household routines. . . .

20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00 Mental Disorders. However, Dr. Adams' report states,

> He does note that he currently has difficulty with being able to sustain focused attention and complete his everyday routines without resorting to family or lists to remind him to do certain tasks. He has noted a decreased tolerance of decision-making, consistency in following through with a task, and tolerance of stress or conflict in relation to task completion.

Tr. at 990. It is a mystery how the ALJ could interpret this as a finding that Sullivan has good attention and concentration skills.

Third, the ALJ claims that Dr. Adams found Sullivan did not have difficulty maintaining social functioning because Sullivan maintained appropriate social functions within his own family. The Regulations provide,

> *Social functioning* . . . includes the ability to get along with others, e.g., family members, friends, neighbors, grocery clerks, landlords, bus drivers, etc. . . .
> "Marked" is not the number of areas in which social functioning is impaired, but the overall degree of interference in a particular area or combination of areas of functioning. . . .

8

20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00 Mental Disorders. So, contrary to the ALJ's assertion, appropriate social functioning within his family is not inconsistent with a marked difficulty in maintaining social functioning. In fact, Dr. Adams' report notes that "Mr. Sullivan does not interact socially, except with his family." Tr. 990. Dr. Adams' report further diagnoses Sullivan with agoraphobia. Id. Clearly, Dr. Adams' report cannot be interpreted as a finding that Sullivan maintains appropriate social functioning.

For the following two reasons, this court reverses the ALJ's findings and remands the case for further review. First, the ALJ's failed to evaluate all the medical opinions presented to him, as was required by 20 C.F.R. § 404.1527. This court has previously observed

> that the requirements of 20 C.F.R. § 404.1527 serve the dual purpose of ensuring (1) that the ALJ carefully considers all of the medical evidence before him and (2) that the ALJ's reasons for attributing more or less weight to certain medical opinions are well-documented, thereby permitting the ALJ's findings to be properly reviewed under the substantial evidence standard. This dual purpose is consistent with the general rule that "[t]he Secretary has an obligation both to claimants and to reviewing courts to make full and detailed findings in support of his ultimate conclusion." Small v. Califano, 565 F.2d 797, 801 (1st Cir. 1977) (citing, inter alia, 42 U.S.C. § 405(b)).

Sapier, supra, slip op. at 18-19.

9

On remand, the ALJ shall evaluate all of the medical opinions presented to him, not just that of Dr. Adams. If the ALJ determines that any of the medical opinions of plaintiff's treating physicians are not entitled to controlling weight, his explanation for such determinations shall meet the requirements of 20 C.F.R. § 404.1527(d).

Second, the one report the ALJ did evaluate does not support the ALJ's conclusion that Sullivan does not satisfy the "B." requirements.


## Conclusion

As set forth herein, the Secretary's disability determination is reversed and this case is remanded for a redetermination of plaintiff's eligibility for disability insurance benefits in accordance with the provisions of this order. Plaintiff's motion to reverse the Secretary's decision is accordingly granted, and defendant's motion to affirm the Secretary's decision is denied. The clerk shall enter judgment.

**SO ORDERED.**

_____
Shane Devine, Senior Judge
United States District Court

August 28, 1997

cc:    Robert E. Raiche, Esq.
       David L. Broderick, Esq.

10