Chamberlain v. SSA                    CV-98-029-M    07/08/99

UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE


Thomas Chamberlain,
        Plaintiff

        v.                                        Civil No. 98-29-M

Kenneth S. Apfel, Commissioner
Social Security Administration,
        Defendant


**O R D E R**


Pursuant to 42 U.S.C. § 405(g), claimant, Thomas Chamberlain, moves to reverse the Commissioner's decision denying his application for Social Security Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. § 423, and Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381, et seq. (the "Act"). Defendant objects and moves for an order affirming the decision of the Commissioner.


**Factual Background**

I.    Procedural History.

On January 19, 1995, claimant filed an application for disability insurance benefits and supplemental security income under Titles II and XVI of the Act, alleging that he had been unable to work since August 2, 1994. The Social Security Administration denied his application initially and on reconsideration. On August 8, 1995, claimant, his attorney, and

a vocational expert appeared before an Administrative Law Judge, who considered claimant's application de novo. On February 21, 1996, the ALJ issued his order, concluding that although claimant was unable to perform his past relevant work, he retained the residual functional capacity to perform a range of medium work. Administrative transcript, at 20. And, although he concluded that claimant's ability to secure gainful employment was further limited by certain non-exertional limitations, the ALJ determined that he was capable of performing a number of sedentary and light jobs which exist in substantial numbers in the national economy. Accordingly, the ALJ concluded that claimant was not disabled, as that term is defined in the Act, at any time through the date of his decision.

Claimant then sought review of the ALJ's decision by the Appeals Council. On December 17, 1997, the Appeals Council determined that the ALJ's decision was supported by substantial evidence, thereby rendering it a final decision of the Commissioner, subject to judicial review. On January 15, 1998, claimant filed a timely action in this court, asserting that the ALJ's decision was not supported by substantial evidence and seeking a judicial determination that he is disabled within the meaning of the Act. Subsequently, claimant filed a "Motion for Order Reversing Decision of the Commissioner" (document no. 11). The Commissioner objected and countered with a "Motion for Order

2

Affirming the Decision of the Commissioner" (document no. 16).

Those cross-motions are pending.


II.   Stipulated Facts.

Pursuant to this court's Local Rule 9.1(d), the parties have submitted a statement of stipulated facts which, because it is part of the court's record (document no. 15), need not be recounted in this opinion.


**Standard of Review**

I.   Properly Supported Findings by the ALJ are
     Entitled to Deference.

Pursuant to 42 U.S.C. § 405(g), the court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary [now, the "Commissioner"], with or without remanding the cause for a rehearing."  Factual findings of the Commissioner are conclusive if supported by substantial evidence.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Irlanda Ortiz v. Secretary of Health and Human Services, 955 F.2d 765, 769 (1st Cir. 1991).[1] Moreover, provided the ALJ's findings are supported by substantial evidence, the court must sustain those findings even

_____

[1]  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938).  It is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. Consolo v. Federal Maritime Comm'n., 383 U.S. 607, 620 (1966).

3

when there may also be substantial evidence supporting the claimant's position.  See Gwathney v. Chater, 104 F.3d 1043, 1045 (8th Cir. 1997) (The court "must consider both evidence that supports and evidence that detracts from the [Commissioner's] decision, but [the court] may not reverse merely because substantial evidence exists for the opposite decision.").  See also Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995) (The court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation."); Tsarelka v. Secretary of Health & Human Services, 842 F.2d 529, 535 (1st Cir. 1988) ("[W]e must uphold the [Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence.").

In making factual findings, the Commissioner must weigh and resolve conflicts in the evidence.  See Burgos Lopez v. Secretary of Health & Human Services, 747 F.2d 37, 40 (1st Cir. 1984) (citing Sitar v. Schweiker, 671 F.2d 19, 22 (1st Cir. 1982)).  It is "the responsibility of the [Commissioner] to determine issues of credibility and to draw inferences from the record evidence.  Indeed, the resolution of conflicts in the evidence is for the [Commissioner] not the courts."  Irlanda Ortiz, 955 F.2d at 769.  Accordingly, the court will give deference to the ALJ's credibility determinations, particularly where those determinations are supported by specific findings.  See Frustaglia v. Secretary of Health & Human Services, 829 F.2d 192,

4

195 (1st Cir. 1987) (citing <u>Da Rosa v. Secretary of Health and Human Services</u>, 803 F.2d 24, 26 (1st Cir. 1986)).

II.   <u>The Parties' Respective Burdens</u>.

An individual seeking Social Security disability benefits is disabled under the Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 416(i)(1)(A).  <u>See also</u> 42 U.S.C. § 1382c(a)(3).  The Act places a heavy initial burden on the claimant to establish the existence of a disabling impairment.  <u>See</u> <u>Bowen v. Yuckert</u>, 482 U.S. 137, 146-47 (1987); <u>Santiago v. Secretary of Health and Human Services</u>, 944 F.2d 1, 5 (1st Cir. 1991).  To satisfy that burden, the claimant must prove that his impairment prevents him from performing his former type of work.  <u>See</u> <u>Gray v. Heckler</u>, 760 F.2d 369, 371 (1st Cir. 1985) (citing <u>Goodermote v. Secretary of Health and Human Services</u>, 690 F.2d 5, 7 (1st Cir. 1982)).  Nevertheless, the claimant is not required to establish a doubt-free claim.  The initial burden is satisfied by the usual civil standard: a "preponderance of the evidence."  <u>See</u> <u>Paone v. Schweiker</u>, 530 F. Supp. 808, 810-11 (D. Mass. 1982).

In assessing a disability claim, the Commissioner considers objective and subjective factors, including: (1) objective

5

medical facts; (2) the claimant's subjective claims of pain and disability as supported by the testimony of the claimant or other witnesses; and (3) the claimant's educational background, age, and work experience.  See, e.g., Avery v. Secretary of Health and Human Services, 797 F.2d 19, 23 (1st Cir. 1986); Goodermote, 690 F.2d at 6.  Provided the claimant has shown an inability to perform his previous work, the burden shifts to the Commissioner to show that there are other jobs in the national economy that he can perform.  See Vazquez v. Secretary of Health and Human Services, 683 F.2d 1, 2 (1st Cir. 1982).  If the Commissioner shows the existence of other jobs which the claimant can perform, then the overall burden to demonstrate disability remains with the claimant.  See Hernandez v. Weinberger, 493 F.2d 1120, 1123 (1st Cir. 1974); Benko v. Schweiker, 551 F. Supp. 698, 701 (D.N.H. 1982).

When determining whether a claimant is disabled, the ALJ is required to make the following five inquiries:

(1) whether the claimant is engaged in substantial gainful activity;

(2) whether the claimant has a severe impairment;

(3) whether the impairment meets or equals a listed impairment;

(4) whether the impairment prevents the claimant from performing past relevant work; and

(5) whether the impairment prevents the claimant from doing any other work.

6

20 C.F.R. § 404.1520. See also 20 C.F.R. § 416.902. Ultimately, a claimant is disabled only if his:

> physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A). See also 42 U.S.C. § 1382c(a)(3)(B).

With those principles in mind, the court reviews claimant's motion to reverse and the Commissioner's motion to affirm his decision.

## Discussion

I. Background - The ALJ's Findings.

In concluding that Mr. Chamberlain was not disabled within the meaning of the Act, the ALJ properly employed the mandatory five-step sequential evaluation process described in 20 C.F.R. §§ 404.1520 and 416.920. Accordingly, he first determined that claimant had not been engaged in substantial gainful employment since August 2, 1994. Next, he considered whether any of claimant's impairments were severe. In that regard, the ALJ concluded that "the medical evidence shows severe impairments of

7

impaired hearing, anxiety, depression and varicose veins."
Transcript at 17.[2]

The ALJ also concluded, however, that claimant's high blood pressure (which is controlled by medication), his avoidant personality disorder, low-average intelligence, and history of tinea versicolor did not impose any substantial work limitations and were not severe under the Act.  Id.  Assessing claimant's impairments, both alone and in combination, the ALJ determined that "there is no combination of impairments so severe that the requirements of any section of the Listings are met and no condition of medical equivalence."  Id.

Next, the ALJ concluded that claimant is able to perform the exertional requirements of at least medium work (which necessarily includes the finding that claimant could also perform the exertional requirements of light and sedentary work).  He also held that claimant's non-exertional limitations imposed only "a moderate decrease in his ability to complete detailed or complex work as well as to cope with high-stress work."
Transcript at 18.  Consequently, the ALJ determined that claimant:

_____

2    It is worth noting that the ALJ's conclusion that claimant's hearing impairment is "sever" is based upon an evaluation of claimant's underlined(uncorrected) hearing (that is, his ability to hear without the use of a hearing aid).

8

needs a job with little contact with the public and co-workers. I find him unable to perform jobs where average production quotas are required or where he is closely supervised. In combination with his hearing impairment, he heeds to have job functions demonstrated one or two times.

Id.


Finally, after considering claimant's residual functional capacity, including both his exertional and non-exertional limitations, and relying, at least in part, upon the testimony of the vocational expert, the ALJ concluded that there is a substantial number of jobs in the national economy which claimant is capable of performing. Accordingly, he held that claimant was not disabled within the meaning of the Act.


II   Use of the Grid in Combination with V.E. Testimony.

In light of the ALJ's conclusion that claimant retained the RFC to perform the exertional requirements of a range of medium work, the Medical-Vocational Guidelines, 20 C.F.R Part 404, Subpart P, Appendix 2 (the Grid"), would direct a conclusion that claimant is not disabled. However, because claimant also suffers from non-exertional limitations, direct application of the Grid - which takes into account only exertional limitations - is not appropriate.

Nevertheless, the Court of Appeals for the First Circuit has recognized that there are circumstances under which an ALJ may use the Grid as a "framework for consideration of how much the

9

individual's work capability is further diminished." Ortiz, 890 F.2d at 524 (quoting 20 C.F.R Part 404, Subpart P, App. 2, § 200.00(e)(2)). Here, the ALJ did just that:

> Although the claimant's limitations do not allow him to perform the full range of medium work, using the above-cited rule as a framework for decision-making there is a significant number of jobs which the claimant can perform.

Transcript at 21.

Additionally, it is important to note that the ALJ did not simply use the Grid in a vacuum. Instead, he solicited the expertise of a vocational expert. In presenting his hypothetical questions to the vocational expert, the ALJ asked her to assume that an individual suffered from each of the exertional and non-exertional limitations which, when viewed as a whole, claimant says render him disabled: (1) an ability to lift no more than 50 pounds occasionally and 25 pounds frequently; (2) an inability to perform repetitive bending and stooping; (3) an inability to reach, handle, finger, and feel; (4) an inability to tolerate environments characterized by dust or chemical fumes; (5) an inability to work at heights; (6) a moderate decrease in the ability to perform detailed or complex work; (7) an inability to have more than limited supervision and contact with the public; (8) a decreased ability to cope with high stress work; and (9) an ability to meet only limited production quotas. Those hypothetical limitations are consistent with claimant's

10

limitations, as disclosed in the medical records as well as claimant's description of his daily activities and hobbies. They are also consistent with the ALJ's conclusion that claimant "requires no regular medical attention; he has not followed through with suggested medical advice, including securing hearing aids; and, he requires no significant medications or treatment modalities for his condition." Transcript at 19.

Notwithstanding those limitations, the vocational expert testified that there is a substantial number of jobs in the national economy which an individual with those limitations could perform. Transcript at 53-80. The ALJ accepted the vocational expert's testimony and relied upon it in reaching his determination that claimant was not disabled.

Claimant says that he is incapable of performing any of the jobs identified by the vocational expert. While the court does not necessarily agree with claimant's assessment of his ability to perform many of those jobs, a detailed discussion of claimant's views on that issue is not necessary. Among other things, the vocational expert opined, and the ALJ concluded, that claimant could perform sedentary and light security jobs, which exist in significant numbers in the national economy. As to that conclusion, claimant raises two objections.

A.   Effect of Claimant's Hearing Impairment.

11

Claimant asserts that his hearing impairment substantially reduces the number of such jobs he can actually perform. The vocational expert testified, however, that while the ability to hear well is important to someone working as a security guard, it is far less important one working as a surveillance system monitor. Transcript at 66. Perhaps more importantly, however, the ALJ could have determined that, although claimant's uncorrected hearing creates a "severe impairment," that impairment lends itself to rather simple correction through amplification. The medical records (see, e.g., transcript at 179-81; 198-99) and plaintiff's own statements regarding his daily activities (e.g., his use of an audio amplifier on his television set) support that conclusion. In fact, the ALJ specifically noted in his decision that claimant has not followed medical advice he has received regarding the purchase of a hearing aid. Transcript at 19.

Implicit in any finding of disability is the conclusion that a claimant's impairment(s) cannot be readily corrected by reasonable methods of treatment. Accordingly, the pertinent regulations specifically instruct claimants that "[i]n order to get benefits, you must follow treatment prescribed by your physician if this treatment can restore your ability to work." 20 C.F.R §§ 404.1530(a), 416.930(a). Plainly, this regulation is rooted in reason and logic: a claimant is not disabled if his or her disabling limitation lends itself to reasonable and readily

12

accessible correction.  The pertinent regulations go on to provide that "[i]f you do not follow the prescribed treatment without a good reason, we will not find you disabled."  20 C.F.R §§ 404.1530(b), 416.930(b).  See also Tsarelka, 842 F.2d at 534.

The Court of Appeals for the Tenth Circuit has elaborated upon those regulations and articulated four factors, each of which must be present in order for the ALJ to conclude that a claimant's failure to follow prescribed treatment precludes the recovery of disability benefits.  Although the court of appeals for this circuit has yet to expressly adopt the Tenth Circuit's test, it still provides useful guidance.  Under that test, a failure to follow prescribed treatment will preclude a finding of disability if each of the following factors is present:

> (1) the treatment at issue should be expected to restore the claimant's ability to work; (2) the treatment must have been prescribed; (3) the treatment must have been refused; (4) the refusal must have been without justifiable excuse.

Pacheco v. Sullivan, 931 F.2d 695, 697-98 (10th Cir. 1991) (quoting Teter v. Heckler, 775 F.2d 1104, 1107 (10th Cir. 1985)).

Here, the record certainly supports the conclusion that each of those four factors was present and the ALJ properly concluded that claimant's impaired hearing did not limit his ability to secure gainful employment.  First, the medical evidence establishes that claimant's hearing impairment lends itself to,

13

at a minimum, partial correction through amplification.  See Report of Hamden Moody, Jr., M.D., transcript at 198-99.  In a subsequent letter from Dr. Moody to claimant's attorney, Dr. Moody explained:

> Mr. Chamberlain's audiogram shows a moderate-to-severe volume loss, and on testing the clarity, which is the speech discrimination score, he scores 100% in both ears.  This indicates that as long as the volume is increased the hearing clarity should be in the normal range.  With the 100% discrimination score this usually indicates that the patient should do well with amplification from hearing aids. . . . Mainly based on this test, the patient should be a good candidate for hearing aids.  The only simple solution would be to have the patient get a hearing aid trial and see what the improvement is.  However, the tests indicate that he should do well with amplification.

Transcript at 229.

Nothing in the record suggests that amplification would not likely restore claimant's hearing to the normal range.  In fact, the record shows that each treating expert who expressed an opinion on the matter informed plaintiff that use of a hearing aid would likely benefit him substantially.  It is equally clear that, notwithstanding the medical advice that he received, claimant did not obtain a hearing aid.  The only reason suggested in the record for plaintiff's failure to obtain a hearing aid is his concern that he could not afford the required batteries.  See Transcript at 53 (claimant testified that he could not afford batteries for the amplifier he used) and 58 (in posing his hypothetical to the vocational expert, the ALJ noted that, "The

14

amplification helped him.  He just doesn't have the money to buy batteries.").  Absent further evidence suggesting that claimant's concern about the cost of batteries was a legitimate basis upon which to rest his refusal to obtain a hearing aid, the court must view his conduct as "without justifiable excuse."

Additionally, claimant's failure to follow the advice of his physicians and obtain a hearing aid suggests that his hearing loss has had little effect on his ability to effectively communicate with others; if his uncorrected hearing did, in fact, adversely affect his ability to communicate with others, it is reasonable to assume that he would have, at a minimum, more fully explored the possibility of obtaining a hearing aid.  His failure to do so certainly undermines his claim that his impaired hearing is a factor which substantially limits his ability to secure gainful employment.  See, e.g., Audiologist's report, transcript at 179 ("When speech stimuli were presented at a sensation level of 40dB, discrimination ability was excellent for both ears."); Report of Scott Diehl, M.D., transcript at 190 ("Assessment: The patient can understand spoken language quite easily.  It does require one to speak loudly and clearly, but he can [understand] quite easily.").

Consequently, to the extent that the positions of security guard and/or surveillance system monitor actually demand auditory acuity, the ALJ could have reasonably concluded that claimant was

15

capable of performing those jobs.  He certainly could have concluded that plaintiff could (and probably should) have heeded the advice of treating experts and, at a minimum, explored the possibility of acquiring a hearing aid, which the medical evidence of record suggests would have enabled him to perform those jobs without any problem.  See transcript at 58 (in his hypothetical to the vocational expert, the ALJ assumed that claimant would acquire and use a hearing aid and, therefore, decreased capacity to hear was not a factor which he asked the vocational expert to assume).

B.    Claimant's Inability to Handle Stress.

Claimant also asserts that the ALJ failed to adequately account for his claims that he cannot handle stressful situations and suffers periodic episodes of anxiety attacks.  The court disagrees.  In his hypothetical, the ALJ adequately accounted for those factors by describing an individual who must have limited contact with the public and whose work would not involve substantial production quotas, complex assembly tasks, or close supervision.  Based upon the evidence presented by claimant relating to his low tolerance for stress and his anxiety attacks, the ALJ's hypothetical was more than adequate.

Although he claims that the interaction of his inability to cope with stressful situations and his anxiety attacks renders him disabled, plaintiff produced little evidence describing the

16

nature of those impairments. When asked by examining experts, he could provide little insight into what triggered his anxiety attacks, nor could he describe what caused him to perceive stress. See, e.g., Report of James Claiborn, Ph.D., transcript at 194. All claimant could say was that he had difficulty meeting demanding production quotas at his last job and, since leaving that job, concerns over obtaining future employment caused him anxiety. With little information to guide him in that regard, the ALJ posed a reasonable hypothetical to the vocational expert which was properly based (to the extent possible) on the facts of record concerning claimant's limitations.

Stated somewhat differently, it is not enough for a claimant to simply say that he is unable to tolerate stressful situations and suffers from frequent anxiety attacks without elaboration and then challenge as insufficient an ALJ's hypothetical which attempts, to the extent possible based upon the limited record, to account for those limitations. Nor can such a claimant reasonably claim that the ALJ failed to fully develop the factual record, when it is clear that plaintiff himself was unable to describe the circumstances or situations which precipitated his anxiety attacks. And, if claimant had additional (and previously undisclosed) evidence or testimony concerning the nature or debilitating effects of those limitations or the circumstances that precipitated his anxiety attacks, the time to present it was at the hearing, when the ALJ (or claimant's counsel) would have

17

had the opportunity to fashion an appropriately detailed hypothetical.

## Conclusion

At step five of the sequential analysis, the Commissioner bore the burden of proving that there were jobs in the national economy which claimant was capable of performing. He carried that burden. Accordingly, claimant's motion to reverse the decision of the Commissioner (document no. 11) is denied, and the Commissioner's motion to affirm his decision (document no. 16) is granted. The Clerk of the Court shall enter judgment in favor of the Commissioner and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

July 8, 1999

cc:  Raymond J. Kelly, Esq.
     David L. Broderick, Esq.

18