Bagley v. SSA                    CV-98-587-JM  08/10/99  C

**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**


Alana Bagley

_____v.                                    Civil No. 98-587-JM

Kenneth S. Apfel, Commissioner,
 Social Security Administration


**O R D E R**


Plaintiff brings this action pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g) (1994), seeking review of a final decision of defendant, the Commissioner of the Social Security Administration (Commissioner), denying her claim for disability benefits under the Act.  Before the court are plaintiff's motion for reversal of the Commissioner's decision (document no. 8), and defendant's motion for an order affirming the Commissioner's decision (document no. 10).

Background

1. Factual Background[1]

At the time of her administrative law hearing Alana Bagley was a 43 year old woman with a high school education and training in real estate. Bagley's previous relevant work experience consisted of working as a postal worker, realtor, and answering service operator. Bagley left work as a postal clerk on June 16, 1994 because she was having difficulty working with her right hand and she fatigued easily. After having carpal tunnel surgery on her right hand in August of 1994 she attempted to return to her previous position in October of 1994. She could not maintain this job for more than two weeks because of her impairments.

Between December of 1990 through February of 1994, Bagley was treated by Dr. Gorman, a rheumatologist, for (1) fatigue, (2) joint pain, and (3) muscle pain. (Tr. 184-216). In January of 1991, Gorman examined Bagley. He found pinprick sensory loss in

_____

[1]Pursuant to Local Rule 9.1(d), the parties have submitted a joint statement of material facts which, because it is part of the court's record (document no. 11), need not be recounted in this opinion. The court recognizes that this will be the second time in the last few months that the court has directed claimant's attorney to Local Rule 9.1(c). Local Rule 9.1(c) instructs the parties to "attach a list of disputed facts to the joint statement of facts ... " rather than submitting these facts within claimant's brief. Despite counsel's error in this case, the court will consider additional facts presented as the court views the record as a whole in its review. In the future, counsel should adhere to the local rules.

2

all of the fingertips in Bagley's right hand and Phalen's maneuver[2] to be positive bilaterally. (Tr. 187). Consistently in his examinations Gorman noted multiple trigger points in areas usually associated with fibromyalgia.[3] (Tr. 184, 192, 196, 202, 205, 207, 211, 213, 214). Over the course of treatment Gorman concluded that Bagley suffered from fibromyalgia, carpal tunnel syndrome(CTS),[4] and arthritis. (Tr. 184, 185, 187-190, 193, 194, 198, 200,[5] 202, 205, 207, 210, 211, 213, 214, 216). Gorman noted that Bagley's CTS condition was "probably induced or aggravated by repetitive motion at work in combination with obesity." (Tr. 187). Dr. Gorman's treatment of Bagley's conditions consisted of a variety of medications such as Flexeril, Amitriptylline, Plaquenil, Depo-Medrol, Lodine, Toradol, Prednisone, Azulfidine,

---

[2]Phalen's maneuver: a test to detect carpal tunnel syndrome that involves holding the affected hand with the wrist fully flexed or extended for 30-60 seconds. See Dorland's Illustrated Medical Dictionary, (28th ed. 1994), at 985.

[3]Fibromyalgia: a condition where there is pain in the muscle fibers. See Dorland's, at 626, 1085.

[4]Carpal tunnel syndrome: a complex of symptoms resulting from compression of the median nerve in the carpal tunnel, with pain and abnormal touch sensations such as burning or tingling in the fingers and hand, sometimes extending to the elbow. See id. at 1234, 1626.

[5]During this exam on September 2, 1992, Gorman reports "Still tremendous pain, having a great deal of difficulty walking around. Needs to use a cane now. Ankles and knees are worse joints." (Tr. 200).

3

Methotrexate, Motrin, Klonopin, and Parafon-Forte. (Tr. 184, 185, 188, 192, 196, 198-200, 202, 204, 207, 211, 214, 215). On Bagley's last appointment with Gorman on February 15, 1994, he noted that Bagley's "[p]soriatic arthritis with Fibromyalgia [is] overall no better." (Tr. 216).

Bagley was also treated by Dr. Louis Candito, an orthopedic surgeon, from April of 1992 through September of 1995. (Tr. 290, 368). Candito diagnosed Bagley with bilateral carpal tunnel syndrome in June of 1993 (Tr. 292). In June of 1994 he noted that this condition was severe and he recommended surgery. (Tr. 295, 296). In August of 1994, Bagley underwent a carpal tunnel release[6] for her right wrist. (Tr. 277). Despite this surgery, Candito reported continuing pain in Bagley's hands. (Tr. 299). Candito also reported that Bagley suffered from fibromyalgia. (Tr. 299). In April of 1995 Candito concluded that Bagley had reached "an end point with respect to medical treatment for the carpal tunnel syndrome." (Tr. 362). He also reported that Bagley continued "to experience pain and numbness in both hands, and [he did] not feel any additional treatment for that problem is likely to be effective." (Tr. 362). He concluded that these symptoms

---

[6]Carpal tunnel release: This surgery involves cutting the transverse carpal ligament and complete release of the median nerve. See Attorney's Textbook of Medicine, (3rd edition), at ¶ 3B.72.

4

were "likely to remain chronic, and will not allow Ms. Bagley to return to her former type of employment." (Tr. 362).

In March of 1994 Bagley began to see a new rheumatologist, Dr. Caryn A. Libey. (Tr. 353). Bagley remained under Libey's care until January of 1995. (Tr. 318). Early on in treatment Libey questioned whether Bagley suffered from inflammatory arthritis but did conclude that Bagley suffered from fibromyalgia and carpal tunnel syndrome. (Tr. 355). These diagnosis remained consistent throughout Bagley's care with Libey. (Tr. 316, 317, 322). Upon examination, Libey noted that Bagley had multiple tender points (Tr. 318, 354). In addition to the medications that Bagley was already taking for her pain and sleeping problems, Libey prescribed Oruvail as treatment. (Tr. 354-355). In January of 1995 Libey concluded that Bagley "suffered from multiple body impairments, including chronic fatigue, fibromyalgia, urinary incontinence, as well as an overlying component of stress and anxiety." (Tr. 318).

Soon after Bagley's carpal tunnel surgery, Dr. Goldenberg, Chief of Rheumatology at Newton Wellesley Hospital, examined Bagley. (Tr. 320). Finding numerous tender points, Goldenberg agreed with Libey's diagnosis of fibromyalgia. (Tr. 322). He recommended cardiovascular exercise, physical therapy, and relaxation techniques as therapy for Bagley. (Tr. 322).

5

Bagley was examined by Dr. William E. Kois, a physiatrist, on October 3, 1994. Upon examination, he found the range of motion of Bagley's neck, shoulders, elbows, and wrists to be relatively full but mildly stiff and uncomfortable. (Tr. 287). Kois also opined that Bagley's capability to move her back was limited because she would experience increased pain as she extended it. (Tr. 287). Dr. Kois concluded that Bagley suffered from fibromyalgia and recommended some type of exercise program for therapy. (Tr. 287).

Two doctors from the Department of Disability Services (DDS) evaluated Bagley in February and April of 1995. (Tr. 80, 101). They both concluded that Bagley suffered from carpal tunnel syndrome, fibromyalgia, and anxiety disorder. (Tr. 80, 101). They also concluded that Bagley's limitations prevented her from performing certain types of jobs. They recommended low-stress, light work settings that did not involve frequent and rapid manipulation of the right hand and wrist. (Tr. 80, 101).

From July 1995 through October 1996 Bagley was treated by Dr. John H. Yost, a rheumatologist at the Hitchcock Clinic. (Tr. 393-400). Yost consistently reported that Bagley suffered from multiple tender points, fatigue, and diffuse pain. (Tr. 392-394, 396, 398, 400). Under his care, Bagley was treated with Indocin, Clonopin, (Tr. 393) and Ultram. (Tr. 396). Yost concluded that

6

Bagley suffered from fibromyalgia-noting that she met the American College of Rheumatology criteria for this condition. (Tr. 413).

In August of 1995 an independent evaluation of Bagley was performed by Dr. Robert Simms, a rheumatologist. He noted the long list of medications that Bagley had been prescribed for treatment of her various conditions (Tr. 382-384) and her long history of hypertension. (Tr. 384). Upon examination, he observed several sites of increased soft tissue tenderness. (Tr. 384). After considering Bagley's symptoms and the medical findings he concluded that Bagley suffered from fibromyalgia. (Tr. 385). He felt that at that point Bagley could only return to work if she was in a position in which she lifted no more than ten pounds and did not have to perform repetitive hand movements. (Tr. 385).

Bagley sought treatment for her psychological problems from pastoral counselor John O'Donnell, D. Min. He treated Bagley from January of 1990 through the date of the administrative hearing. At the hearing he testified that Bagley's ability to concentrate and to do things on a regular schedule had gotten worse over the time he had treated her. (Tr. 48). However, he did indicate that she managed to keep her regularly scheduled appointments with him. (Tr. 53). O'Donnell also testified that

7

he had observed Bagley experience physical pain and fatigue during and after therapeutic sessions with him. (Tr. 53-55). He felt that the stress Bagley was under was severe. (Tr. 55).

In the fall of 1994 Bagley was examined by Dr. Jasna Kuftinec, a psychiatrist. To address Bagley's anxiety and depression Kuftinec placed Bagley on a trial dose of Paxil. (Tr. 325).

Dr. Hans W. Standow performed an independent evaluation of Bagley's mental status in January of 1995. (Tr. 330). He noted that Bagley's past abusive relationships--with her former therapist and during her childhood--had caused her emotional trauma. (Tr. 332). He reported that Bagley was "quite anxious, tense and agitated, [and] quite pressured." (Tr. 332). He also noted that she seemed to be a perfectionist with obsessive-compulsive features who felt "devastated by her present physical problems." (Tr. 332). He diagnosed Bagley with generalized anxiety disorder with recurrent depression and post-traumatic stress disorder which was chronic and mild. (Tr. 332). He felt that Bagley would eventually return to her job in the long-term but noted that at the present time she was "rather dysfunctional" both "socially and occupationally due to her physical and emotional problems." (Tr. 332).

At the hearing Bagley testified that she was right handed

8

(Tr. 56) and as a postal clerk she had used her right hand constantly. (Tr. 57-58). Although she had surgery on her right hand, she still experienced numbness and pain in this hand. (Tr. 58). She stated that other than carpal tunnel syndrome her medical history included such physical problems as: fibromyalgia, chronic fatigue syndrome, bladder incontinence, endometriosis, high blood pressure, irritable bowel syndrome, and migraine headaches. (Tr. 59-60). At that time she reported that her bladder incontinence caused her to have accidents at least a couple of times a month. (Tr. 60). For her fibromyalgia she currently was taking Klonopin, Parafon Forte and Cataflam. (Tr. 61). Because the fibromyalgia caused her to have pain everywhere, she said she would also take Vicodin to decrease the pain. (Tr. 62). She also testified that the chronic fatigue caused her to be so tired that (1) she felt like falling over, (2) she took naps twice a day, (Tr. 63-64) and (3) her family had trouble awakening her (Tr. 69). On a daily basis she stated that she had trouble concentrating (Tr. 66), did very few chores in or out of the house (Tr. 70-72), and that her condition was having a negative effect on her family life. (Tr. 73-74).

2.   Procedural History.

On November 4, 1994 claimant filed an application for

9

disability insurance benefits under Title II of the Act, alleging a disability since June 16, 1994. The Social Security Administration denied her application initially and upon reconsideration. On October 5, 1995 claimant and her representative[7] appeared before an Administrative Law Judge (ALJ), who considered claimant's application de novo. On February 6, 1996, the ALJ issued his order, finding that (1) Bagley had not engaged in substantial gainful activity since June 16, 1994, (2) Bagley satisfied the disability insured status requirements of the Act between June 16, 1994 through December 31, 1998 and (3) at step 2 of the evaluation process Bagley did not have "any impairment or impairments which significantly limit her ability to perform basic work-related activities; therefore, the claimant does not have a severe impairment (20 C.F.R. 404.1521)." (Tr. 27). As a result, the ALJ found that "the claimant was not under a disability, as defined in the Social Security Act, at any time through the date of [the] decision (20 C.F.R. 404.1520)(c))." (Tr. 27). The Appeals Council denied her request for review on May 7, 1998, thereby rendering the ALJ's decision the final decision of the Commissioner, subject to judicial review. On October 28, 1998, claimant commenced the

---

[7]At the time of the hearing Bagley was represented by Arthur Kaufman of Insuring Assistance, Inc.

instant action seeking judicial review.

Discussion

## 1. Standard of Review

This court's review of the Commissioner's decision is governed by 42 U.S.C. §405(g). Pursuant to section 405(g), "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g)(Supp. 1998).

The Social Security Act further "provides that the factual findings of the [Commissioner] shall be conclusive if supported by 'substantial evidence.' " Irlanda Ortiz v. Secretary of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (quoting 42 U.S.C. §405(g)). Substantial evidence means "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).

When making factual findings, the Commissioner must weigh and resolve conflicts in the evidence, settle credibility issues, and draw inferences from the record evidence. See Irlanda Ortiz,

11

955 F.2d at 769. The court will defer to the credibility determinations made by the ALJ, particularly where those determinations are supported by specific findings. See Frustaglia v. Secretary of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987). However, if the Commissioner has misapplied the law or has failed to provide a fair hearing, deference to the Commissioner's decision is not appropriate. See Manso-Pizarro v. Secretary of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996)(Commissioner's decision to deny benefits will be affirmed unless it is based on a legal or clear factual error); see also Slessinger v. Secretary of Health and Human Servs., 835 F.2d 937, 939 (1st Cir. 1987) ("The [Commissioner's] conclusions of law are reviewable by this court.")

2.   The Disability Determination

Disability is defined under the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A); see also Bowen v. Yuckert, 482 U.S. 137, 140 (1987). More specifically, the Act provides that an individual shall be determined to be

12

disabled only if "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A). In light of this legislative mandate, the Commissioner has established a five-step evaluation process for determining whether a disability claimant's medical impairment precludes her from engaging in "substantial gainful activity." See 20 C.F.R. § 404.1520(a)-(f) (1999); Yuckert, 482 U.S. at 140-42; Goodermote v. Secretary of Health & Human Servs., 690 F.2d 5, 6 (1st Cir. 1982).[8] During the first four steps, the

_____

[8]The five steps are as follows:
First, is the claimant currently employed? If [s]he is, the claimant is automatically considered not disabled.
Second, does the claimant have a severe impairment? A 'severe impairment' means an impairment 'which significantly limits his or her physical or mental capacity to perform basic work-related functions.' If the claimant does not have an impairment of at least this degree of severity, [s]he is automatically considered not disabled.
Third, does the claimant have an impairment equivalent to a specific list of impairments contained in the regulations' Appendix 1 ? If the claimant has an impairment of so serious a degree of severity, the claimant is automatically found disabled.
These first three tests are 'threshold' tests. If the claimant is working or has the physical or mental capacity to perform 'basic work-related functions,' [s]he is automatically considered not disabled. If [s]he has an Appendix 1-type impairment, [s]he is

burden is on the claimant to prove that she has an impairment so severe as to prevent her from returning to her former employment. See Goodermote, 690 F.2d at 7. The claimant must present objective medical evidence to prove that she has a disability before her insured status under the Act has expired. See 42 U.S.C. 416(i)(1)(A); 423(d)(1)(A); 20 C.F.R. §§ 404.1512(a)-(b), 404.1513(d); Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995). Once the claimant has demonstrated her inability to return to her past relevant work, the burden shifts to the Commissioner to prove that other jobs exist in the national economy which the claimant can perform. See 20 C.F.R. § 404.1520(f); Ortiz v. Secretary of Health & Human Servs., 890 F.2d 520, 524 (1st Cir. 1989); Sherwin v. Secretary of Health & Human Servs., 685 F.2d 1, 2 (1st Cir. 1982), cert. denied 461 U.S. 958 (1983).

---

automatically considered disabled. In either case, [her] claim is determined at the 'threshold.' If, however, [her] ability to perform basic work-related functions is impaired significantly ([step] 2) but there is no 'Appendix 1' impairment ([step] 3), the SSA goes on to ask the fourth question:

Fourth, does the claimant's impairment prevent [her] from performing work of the sort [s]he has done in the past? If not, [s]he is not disabled. If so, the agency asks the fifth question.

Fifth, does the claimant's impairment prevent [her] from performing other work of the sort found in the economy? If so, [s]he is disabled; if not, [s]he is not disabled.

Goodermote, 690 F.2d at 6-7.

<u>3.    The ALJ's Decision</u>

In this case, the ALJ terminated Bagley's claim at step two of the process concluding that "[t]here are no physically or psychologically based restrictions that would interfere with the claimant's ability to perform work activity on a regular basis." (Tr. 26). Thus, the ALJ determined that Bagley did not have a severe physical or psychological impairment according to the regulations. (Tr. 26). In support of this position the ALJ determined that (1) "there are no medical reports with findings or treatment records indicating that the claimant would be unable to perform basic work activities" and (2) claimant's allegations of a disabling condition "were not wholly credible in view of the conservative medical treatment, the testimony at the hearing, her activity level and her functional capabilities." (Tr. 26).

Plaintiff contends that the ALJ erred at step two of the evaluation process in two ways. First, Bagley contends that the ALJ improperly assessed Bagley's credibility when he determined that her allegations of disability were not credible. See Plaintiff's Memorandum at 21. Second, Bagley asserts that the combination of her impairments--fibromyalgia, chronic fatigue, carpal tunnel syndrome, depression, and anxiety--meet the threshold requirement of severity under the regulations. See Plaintiff's Memorandum at 19. Thus, asserts Bagley, the ALJ's

15

determination that she did not have a severe impairment is not supported by substantial evidence. <u>See</u> Plaintiff's Memorandum at 25.

The court agrees with Bagley for several reasons. At step two of the evaluation process the Commissioner must determine if the individual has an impairment and if that impairment is severe. <u>See</u> 20 C.F.R. §404.1520(c). At step two a finding that a claimant's impairment or combination of impairments is non-severe[9] will end the evaluation process and the claimant will not be considered disabled for benefit purposes. <u>See</u> 20 C.F.R. §404.1520(a); <u>Goodermote v. Secretary</u>, 690 F.2d 5, 6 (1st Cir. 1982). A severe impairment is a mental or physical condition, either resulting in death or continuing for at least twelve consecutive months, that significantly limits an individual's physical or mental ability to perform basic work activities. <u>See</u> 20 C.F.R. §404.1520(c). Basic work activities are abilities and aptitudes necessary to do most jobs, including physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling. <u>See</u> 20 C.F.R. §404.1521(b). Non-exertional functions such as ability to hear, see, speak, understand, remember, carry out simple instructions, use

---

[9]A non-severe impairment is one which does not significantly limit an individual's ability to do basic work activities. <u>See</u> 20 C.F.R. 404.1521.

16

judgment, respond appropriately in work-like conditions and deal with changes in a routine work setting are also considered basic work activities. See id.

Impairments can only be considered non-severe if these impairments have only a minimal effect on a claimant's ability to do basic work activities. See McDonald v. Secretary of Health, 795 F.2d 1118, 1124-25 (1st Cir. 1986); 20 CFR §404.1521. Furthermore, "[g]reat care should be exercised in applying the not severe impairment concept. If an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation process should not end with the not severe evaluation step." Social Security Ruling 85-28.

An applicant's age, education and work experience are not considered in evaluating the severity of an impairment. See 20 C.F.R. §404.1520(c); Yuckert, 482 U.S. at 137. Nonetheless, once a claimant has established with medical signs[10] or laboratory findings that a medical impairment exists that can reasonably be expected to produce symptoms such as pain, an individual's subjective complaints of pain associated with this impairment will be considered when determining the impairment's severity at

------

[10]Medical signs are "anatomical, physiological, or psychological abnormalities which can be observed, apart from [claimant's] statements..." 20 C.F.R. §404.1528(b).

17

step two. See 20 C.F.R. §404.1529(b); 20 C.F.R. §404.1529(d)(1); Avery v. Secretary of Health and Human Servs., 797 F.2d 19, 21 (1st Cir. 1986).

Although the ALJ is not required to give credit to the claimant's subjective evaluations of pain if they are inconsistent with the medical findings that exist regarding her condition, see Dupuis v. Secretary of Health and Human Servs., 869 F.2d 622, 623 (1st Cir. 1989), he still must make specific findings detailing the inconsistencies between the claimant's allegations of pain and the objective medical findings, before discounting the claimant's allegations of pain. See Da Rosa v. Secretary of Health and Human Servs., 803 F.2d 24, 26 (1st Cir. 1986)(ALJ must make "specific findings as to the relevant evidence he considered in determining to disbelieve the [claimant]."). This analysis is necessary because situations do exist in which an individual's reported symptoms of pain suggest functional restrictions of a greater degree than can be demonstrated by objective medical evidence alone. See Avery, 797 F.2d at 23; 20 C.F.R. S 404.1529(c)(3). According to the regulations, relevant factors to consider when evaluating pain include: (1) claimant's daily activities, location, duration, (2) the location, duration, frequency, and intensity of the pain alleged, (3) any aggravating factors, (4) type, dosage and

18

effectiveness of any pain medication, (5) treatment other than medication for pain, (6) any other measures claimant has used to relieve the pain. See 20 C.F.R. §404.1529(c)(3).

The ALJ rejected Bagley's contentions that the pain and fatigue produced by her physical problems were severe enough to restrict her ability to do basic work activities. Instead, without any additional analysis, the ALJ concluded that Bagley's allegations of disability were not wholly credible in view of the testimony at the hearing and Bagley's (1) treatment, (2) activity level, and (3) functional capabilities.

The ALJ made legal and factual errors in his analysis of Bagley's subjective complaints of pain and fatigue. Although the ALJ's credibility determinations are normally owed considerable deference, see Dupuis v. Secretary of Health and Human Services, 869 F.2d 622, 623 (1st Cir. 1989), they must be based on a

substantially accurate view of the record evidence.[11] See SSR, 96-7p, 1996 WL 374186 (July 2, 1996). The ALJ's characterizations of evidence within the record for which he based his credibility determination were inaccurate. For instance, he states that Bagley received "conservative medical treatment" for her alleged impairments. (Tr. 26). Nothing could be further from the truth. As the medical records indicate, for symptoms associated with pain in her hands, muscles and joints, in addition to a splint (Tr. 295) and surgery for her right hand, (Tr. 277) Bagley received between fifteen to twenty different types of medication over a five year period. (Tr. 184, 185, 188, 192, 196, 198-200, 202, 204, 207, 211, 214, 215, 354-355, 382-384, 393, 396).

The ALJ also incorrectly states that the testimony at the hearing contradicts Bagley's allegations of disability. He does

---

[11]When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements. . . . The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. . . . The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

Social Security Ruling ("SSR") 96-7p (July 2, 1996).

20

not explain his reasoning for this and it is difficult for the court to understand how he comes to this conclusion based on the testimony on record. Both Bagley and her counselor, O'Donnell, testified that Bagley's impairments (1) limited her daily activities, (2) decreased her functional capabilities, and (3) were disabling. (Tr. 53-55, 58, 59-60, 63-64, 66, 70-72). This testimony was supported by reports by treating and examining physicians who recognized the limitations that Bagley's impairments had on her ability to function. (Tr. Tr. 80, 101, 316, 362, 368, 385, 396, 413.)

Finally, the ALJ improperly evaluated Bagley's subjective complaints of pain and fatigue as required by the regulations when he failed to consider other relevant factors in his analysis. See 20 C.F.R. §404.1529(c)(3). There is no question that medical examinations consistently revealed that Bagley had fibromyalgia and carpal tunnel syndrome--two conditions likely to cause either pain or fatigue. In fact, at least nine doctors who examined Bagley, including several of her treating physicians, confirmed that Bagley suffered from either one or both of these conditions.[12] (Tr. 80, 101, 216, 287, 295-296, 299, 316, 318, 322, 385, 413). Many of these physicians also reported that the

---

[12]Even the ALJ concluded that Bagley suffered from fibromyalgia and carpal tunnel syndrome. (Tr. 26).

21

pain and symptoms associated with these conditions affected Bagley's functional capabilities to work. (Tr. 80, 101, 316, 362, 368, 385, 396, 413.). Based on this evidence, a conclusion that Bagley had no impairment or combination of impairments likely to cause her alleged symptoms of pain and fatigue would not be supported by substantial evidence. Thus, the ALJ committed legal error by failing to evaluate Bagley's allegations of disabling pain and fatigue according to the rules and regulations of the Commissioner. See 20 C.F.R. §404.1529(b); 20 C.F.R. §404.1529(c); 20 C.F.R. §404.1529(d)(1); SSR 96-3p (July 2, 1996).

Finally, according to the evidence on record, the court cannot see how the ALJ reached a conclusion that Bagley's impairments were not severe. It is "simply a matter of common sense that various physical, mental, and psychological defects, each non-severe in and of itself, might in combination, in some cases, make it impossible for a claimant to work." See McDonald, 795 F.2d at 1127. Thus, at step two, the ALJ must consider the combined effect of all of the claimant's impairments even if these impairments taken alone would not be considered severe. See 20 C.F.R. §404.1523.

As discussed previously, several of Bagley's treating and examining physicians indicated that her impairments had an effect on her ability to function normally. For instance, in the spring

22

of 1995 two DDS physicians examined Bagley concluding that she had carpal tunnel syndrome, fibromyalgia, and anxiety disorder. (Tr. 80, 101). With these findings, these physicians concluded that Bagley's impairments limited her ability to work and recommended low-stress work settings that involved light work with limited repetition of rapid hand movements. (Tr. 80, 101). In April of 1995, Dr. Candito, a treating physician, concluded that Bagley's symptoms of pain and numbness in both hands were "likely to remain chronic," she had reached "an end point with respect to medical treatment for the carpal tunnel syndrome," and these conditions prevented Bagley from returning to her job at the post office. (Tr. 362). In August of 1995, Dr. Simms performed an independent medical evaluation on Bagley. At that point in time, Dr. Simms concluded that Bagley could only return to work in a position that involved lifting no more than ten pounds and did not require repetitive hand movements. (Tr. 385). Finally, another treating physician, Dr. Yost, reported in December of 1995 that the functional limitations of Bagley's fibromyalgia prevented her from "return[ing] to full duty, or even light duty, employment." (Tr. 396).

As the government's attorney points out, at step two of the evaluation process the Commissioner may deny a claimant disability benefits if the claimant does not have an impairment

23

that is considered severe. See 20 C.F.R. §404.1520(c); Yuckert, 482 U.S. at 153. Nonetheless, the validity of the step two regulation depends upon how it is applied. See Yuckert, 482 U.S. 158 (O'Connor, J., concurring); McDonald, 795 F.2d at 1124-25; Social Security Ruling 85-28. In this case considering all of the medical evidence indicating that Bagley's impairments effected her basic work activities, it is obvious to the court that the ALJ improperly applied the step two regulation in his evaluation. Even without considering any potential mental impairments[13] that Bagley may have had, the combination of her physical impairments alone over the relevant time period suggest more than a de minimus effect on her ability to do basic work activities at step two. Thus, the Commissioner's finding that Bagley's impairments are not severe is not supported by substantial evidence. Accordingly, the court finds good cause to remand this case to the Commissioner for additional proceedings consistent with this opinion.

_____

[13]Several medical reports indicate that Bagley suffered from depression and anxiety. (Tr. 80, 101, 318, 325, 332). Once a mental impairment is established, such as depression or anxiety, the ALJ must follow a specific evaluation process in evaluating the severity of that impairment as established by 20 C.F.R. 404.§1520a. In addition, the First Circuit has "made few bones about [its] insistence that the [Commissioner] bear a responsibility for adequate development of the record in [Social Security] cases." Evangelista v. Secretary, 826 F.2d 136, 142 (1st Cir. 1987).

CONCLUSION

For the reasons set forth herein, plaintiff's motion to reverse the Commissioner's decision is <u>granted</u> (document no. 8). Defendant's motion to affirm the Commissioner's decision (document no. 10) is <u>denied</u>.

Under sentence <u>4</u> the court herewith remands this matter to the Commissioner to determine the disabling effect of plaintiff's impairments beyond step two of the evaluation process.

**SO ORDERED.**

_____
James R. Muirhead
United States Magistrate Judge

August 10, 1999

cc:  Raymond J. Kelly, Esq.
     David L. Broderick, Esq.

25