Roger AUBUCHON o/b/o David Aubuchon, Plaintiff

v.

Jo Anne B. BARNHART, Commissioner of the Social Security Administration, Defendant

No. CIV.A. 05–30124–KPN.

United States District Court, D. Massachusetts.

Nov. 23, 2005.

---

Karen L. Goodwin, United States Attorney's Office, Springfield, MA, for Jo Anne B. Barnhart, Defendant.

Richard C. Roth, Law Office of Richard C. Roth, Springfield, MA, for Roger Aubuchon, Plaintiff.

*MEMORANDUM AND ORDER WITH REGARD TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS and DEFENDANT'S MOTION TO AFFIRM THE DECISION OF THE COMMISSIONER (Document Nos. 9 and 11).*

NEIMAN, United States Magistrate Judge.

This matter is before the court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) which provide for judicial review of a final decision by the defendant, the Commissioner of the Social Security Administration (the "Commissioner"), regarding an individual's entitlement to Supplemental Security Income ("SSI") and Social Security Disability Insurance ("SSDI") benefits. The action is brought by Roger Aubuchon (hereinafter "Plaintiff") on behalf of his

son, David Aubuchon (hereinafter "Aubuchon"), who died on October 8, 2004. Plaintiff alleges that the Commissioner's decision denying Aubuchon SSI and SSDI benefits for a closed period of time between December 31, 1999, and August 16, 2001—memorialized in a May 28, 2004 decision by an administrative law judge—is not supported by substantial evidence and is predicated on errors of law. Plaintiff, via a motion for judgment on the pleadings, has moved to reverse or remand the decision and the Commissioner has moved to affirm.

With the parties' consent, this matter has been assigned to the undersigned pursuant to 28 U.S.C. § 636(c) for all purposes, including entry of judgment. For the reasons set forth below, the court will allow Plaintiff's motion and order that benefits be paid. Accordingly, the court will deny the Commissioner's motion to affirm.

## I. STANDARD OF REVIEW

■ The Commissioner's factual findings in making her disability determination are conclusive so long as they are grounded in substantial evidence. *See* 42 U.S.C. §§ 405(g) and 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). It is "more than a mere scintilla." *Id.* Thus, even if the administrative record could support multiple conclusions, a court must uphold the Commissioner's findings "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [her] conclusion." *Irlanda Ortiz v. Sec'y of Health & Human Servs.,* 955 F.2d 765, 769 (1st Cir.1991) (citation and internal quotation marks omitted).

■ Even so, a denial of disability benefits need not be upheld if there has been an error of fact or law in the evaluation of the particular claim. *See Manso–Pizarro v. Sec'y of Health & Human Servs.,* 76 F.3d 15, 16 (1st Cir.1996). In the end, the court maintains the power, in appropriate circumstances, "to enter ... a judgment affirming, modifying, or reversing the [Commissioner's] decision" or to "remand[ ] the cause for a rehearing." 42 U.S.C. 405(g).

## II. BACKGROUND

Aubuchon, born on March 24, 1959, completed high school and thereafter trained to be a machine operator. (Administrative Record ("A.R.") at 159, 161.) His prior relevant work included unskilled manual labor requiring medium to heavy exertion levels. (A.R. at 159.) He had also served as a maintenance man in the apartment complex where he lived prior to moving in with his parents in 1999. (A.R. at 160.)

Aubuchon initially claimed to be disabled beginning September 2, 1997, the day he stopped working. (A.R. at 159.) He later amended that onset date to December 31, 1999, his last insured date for SSDI purposes. (See *id.*) Further procedural background follows a brief description of Aubuchon's medical history.

### A. *Aubuchon's Medical History*

In 1997, Aubuchon fell from a ladder at work and injured his back. (A.R. at 83.) He did not suffer any broken bones and continued to work. (A.R. at 83, 162.) Two years later, in June of 1999, Aubuchon visited the emergency room complaining of chronic low back pain radiating down his left leg. (A.R. at 83.) He was referred to doctors at Baystate Medical Center's Internal Medicine Clinic. (*Id.*)

Aubuchon visited his primary care physician, Dr. Claudia Martorel, on September 7, 1999, and reported leg and back com-

plaints as well as occasional urinary incontinence. Dr. Martorel, detecting alcohol on Aubuchon's breath and noting his reported alcohol abuse, ordered liver testing. That testing showed elevated liver functioning indicative of liver disease. (*Id.*) In addition, Aubuchon was found to be anemic with a hematocrit of 29.9%. (A.R. at 84.)[1]

On January 12, 2000, Dr. Marc Linson, a spinal surgeon, examined Aubuchon, who had reported that his back and leg pain worsened when he sat, stood, walked, coughed and sneezed. Dr. Linson noted that Aubuchon had a significantly decreased range of spinal motion as well as sensory loss in his left leg and foot. (*Id.*)

On April 21, 2000, Aubuchon was examined by Dr. John Daly at Baystate's Pain Management Clinic. Dr. Daly diagnosed Aubuchon with lumbar discogenic pain secondary to a lumbar annular tear. A follow-up examination on May 17, 2000, showed no change in Aubuchon's condition. (*Id.*) Dr. Daly described Aubuchon as having a persistent, antalgic gait, *i.e.,* movements adapted to reduce pain, along with restricted range of motion, flexion, and extension. In addition, Aubuchon's lower back muscles were found to be tender. (*Id.*)

During the summer of 2000, Aubuchon attended physical therapy sessions at Mercy Hospital's Weldon Center. Staff there prescribed a cane, which Aubuchon began using on July 26, 2000. (*Id.*)

On January 19, 2001, Aubuchon again visited Dr. Martorel who noted his chronic back pain and anemia. (A.R. at 85.) Dr. Martorel cautioned Aubuchon about continued alcohol use and referred him to a neurosurgeon, Dr. Christopher Comey.

When Aubuchon declined surgery, Dr. Comey referred him back to the Pain Management Clinic. (*Id.*)

Dr. Arul Verghis examined Aubuchon at the Pain Management Clinic on February 9, 2001. Dr. Verghis noted that Aubuchon exhibited pain upon straight leg raising on the left side as well as decreased ankle reflexes, decreased sensation and decreased strength in all muscles of his left lower extremity. In addition, Aubuchon continued to walk with an antalgic gait. Dr. Verghis prescribed spinal steroid injections and the first injection was given during that visit. The second and last injection was given on March 26, 2001. Four days later, Dr. Martorel prescribed a megadose of Neurontin for pain control plus other medications. (*Id.*)

On August 17, 2001, Aubuchon was hospitalized at Baystate Medical Center with acute liver disease-chronic hepatitis C and cirrhosis of the liver. (A.R. at 317–57.) Upon admission, Aubuchon exhibited "huge esophageal varices" that required extensive banding to stop the bleeding. He remained at the hospital for over two weeks. The banding procedure needed to be repeated in January of 2002 as he continued to be notably anemic. (A.R. at 377–78.) As indicated, Aubuchon died from liver disease in October of 2004.

### B. *Procedural History*

In the midst of these medical benchmarks, Aubuchon applied for SSDI and SSI benefits on March 17, 2000, alleging that he had been disabled since December 31, 1999. (A.R. at 111–15.) His applications were denied initially and upon reconsideration. (A.R. at 56, 61.) On December 18, 2001, following a hearing, an administrative law judge ("ALJ") issued a

---

1. A hematocrit is "a blood test measuring the ratio of the volume of blood cells to the volume of whole blood." *Slone–Dorland Annotated Medical–Legal Dictionary* (1992) (citing *Mirsa, Inc. v. State Med. Bd.,* 42 Ohio St.2d 399, 329 N.E.2d 106-07 (1975)).

partially favorable decision. (A.R. at 31–52.) The ALJ found that Aubuchon was disabled as of his hospital admission on August 17, 2001, but not prior to that date.

Aubuchon requested review of the ALJ's decision by the Appeals Council. (A.R. at 82–87.) In an order dated March 6, 2003, the Appeals Council affirmed the finding that Aubuchon was disabled as of August 17, 2001, but vacated the decision with respect to the ALJ's finding of no disability between December 31, 1999, and August 16, 2001. Since the hearing tape could not be located, the Appeals Council remanded the case for a rehearing. (A.R. at 53–55.)

A second hearing before the same ALJ was held on August 13, 2003 (A.R. at 393–438), but because there was no medical expert present to testify, Aubuchon's attorney requested a supplemental hearing as well (A.R. at 437). The ALJ selected a board-certified internal medicine specialist, Dr. Morton Solomon, to appear and testify as an "expert medical witness." (A.R. at 108–10.) The supplemental hearing was held on February 12, 2004. (A.R. at 439–67.)

On May 28, 2004, the ALJ issued a decision in which he again determined that Aubuchon was not disabled between December 31, 1999, and August 16, 2001. (A.R. at 14–27.) While Aubuchon's request for review was pending before the Appeals Council, Aubuchon died. (A.R. at 387–92.) Thereafter, in an order dated April 1, 2005, the Appeals Council declined to review the ALJ's decision, thus making the ALJ's decision the final decision of the Commissioner. (A.R. at 8–12.) Plaintiff commenced this action on May 26, 2005. In due course, the parties filed the cross motions currently at issue.

### III. DISCUSSION

An individual is entitled to SSDI benefits if, among other things, he has an insured status and, prior to the expiration of that status, was under a disability. *See* 42 U.S.C. § 423(a)(1)(A) and (D). SSI benefits, on the other hand, require a showing of both disability and financial need. *See* U.S.C. § 1381(a). Aubuchon's need, for purposes of SSI, and his insured status, for purposes of SSDI, are not challenged. The only question is whether the ALJ properly concluded that he did not suffer from a disability between December 31, 1999 and August 16, 2001.

### A. *Disability Standard and the ALJ's Decision*

The Social Security Act (the "Act") defines disability, in part, as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). *See also* 42 U.S.C. § 1382(a)(3)(A) (similar). An individual is considered disabled under the Act

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B). *See generally Bowen v. Yuckert*, 482 U.S. 137, 146–49, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987). In determining disability, the Commissioner follows

the five-step protocol described by the First Circuit as follows:

First, is the claimant currently employed? If yes, the claimant is automatically considered not disabled.

Second, does the claimant have a severe impairment? A "severe impairment" means an impairment "which significantly limits the claimants physical or mental capacity to perform basic work-related functions." If he does not have an impairment of at least this degree of severity, his is automatically not disabled.

Third, does the claimant have an impairment equivalent to a specific list of impairments in the regulations' Appendix 1? If the claimant has an impairment of so serious a degree of severity, the claimant is automatically found disabled.

. . . . .

Fourth, ... does the claimant's impairment prevent him from performing work of the sort he has done in the past? If not, he is not disabled. If so, the agency asks the fifth question.

Fifth, does the claimant's impairment prevent him from performing other work of the sort found in the economy? If so, his is disabled; if not he is not disabled.

*Goodermote v. Sec'y of Health & Human Servs.,* 690 F.2d 5, 6–7 (1st Cir.1982).

In the instant case, the ALJ answered these questions as follows: that Aubuchon had not engaged in substantial gainful activity since the alleged onset of his disability (question one); that he had impairments that were "severe," *i.e.,* lumbar discogenic pain, alcohol dependence and major depression, although not severe enough to be listed in Appendix 1 (questions two and three); that Aubuchon was unable to perform his past relevant work as a building and apartment maintenance man (question

four); but that between December 31, 1999, and August 16, 2001, Aubuchon was capable of making an adjustment to a specific range of sedentary work which exists in the national economy, *e.g.,* as an inspector or assembler (question five). As a result, the ALJ concluded that Aubuchon did not suffer from a disability during the closed period of time at issue. (A.R. at 26–27.)

**B. *Plaintiff's Challenge to the ALJ's Decision***

Plaintiff claims that the ALJ's decision is not based on substantial evidence of record and is predicated on errors of law. In the court's view, two of Plaintiff's more specific arguments carry weight sufficient to warrant reversal: (1) that the ALJ failed at step two of the sequential analysis to consider Aubuchon's liver disease as a "severe" impairment, and (2) that the ALJ should have deemed Aubuchon's impairments, in combination, to be medically equivalent to a listed impairment at step three.

**1. *Step Two***

Plaintiff first asserts that the ALJ erred at step two of the sequential analysis when he failed to consider Aubuchon's liver disease as being "severe" prior to August 17, 2001. The court agrees.

 As the Commissioner knows, the second step of the evaluation process is "a *de minimus* policy, designed to do no more than screen out groundless claims." *McDonald v. Sec'y of Health & Human Servs.,* 795 F.2d 1118, 1124 (1st Cir.1986) (citation omitted). Thus, if the Commissioner is unable to clearly determine the effect of an impairment on a person's ability to perform basic work activities, the evaluation should not end at this step. *Id.* Accord *Chelte v. Apfel,* 76 F.Supp.2d 104, 108 (D.Mass.1999). Granted, as the Com-

missioner notes, the burden of proof remains with a claimant to establish at step two that his impairments, or combination of impairments, significantly limit his ability to perform basic work activities. *See Bowen*, 482 U.S. at 146, 107 S.Ct. 2287; 20 C.F.R. §§ 404.1520(c), 416.920(c) (2005). But it is equally clear that a claimant need not establish a "doubt-free" claim. *See St. Arnault v. Shalala*, 1995 WL 599224, at *2 (D.N.H. Aug.3, 1995).

■ In the case at bar, there was ample medical evidence supporting Aubuchon's claim that he suffered from severe liver disease, in addition to his other severe impairments, during the relevant time frame. (A.R.449–50.) For example, Dr. Solomon, testifying at the ALJ's request, stated that "it is clear that [Aubuchon] had some kind of hepatic abnormality as far back as 1999." (*Id.* See also *id.* at 452 ("[T]here's indication that he does have liver disease in 1999.").) Moreover, as indicated, tests done in September of 1999 showed that Aubuchon had elevated liver functioning indicative of liver disease and was anemic with a hematocrit of 29.9%.[2] Even the ALJ acknowledged that Aubuchon had life-threatening liver disease which required immediate hospitalization on August 17, 2001. That condition, surely, did not suddenly appear on that day. In short, pursuant to the *de minimus* step two standard, the ALJ should have deemed Aubuchon's liver disease to have been severe between December 31, 1999, and August 16, 2001.

### 2. Step Three

■ As described, a claimant will be deemed "automatically" disabled if he has "an impairment equivalent to a specific list of impairments in the regulations' Appen-

dix 1." *Goodermote*, 690 F.2d at 6. Thus, it is not necessary that an impairment actually be listed, only that it be deemed "medically equivalent." *See* 20 C.F.R. §§ 404.1526(a), 416.926(a) (2005). In the court's view, the ALJ failed to conclude that Aubuchon met the medical equivalency test at step three.

In determining medical equivalence, the SSDI and SSI regulations provide that the Commissioner will compare the listed impairments with "the symptoms, signs, and laboratory findings" exhibited by the impairment which the claimant, in fact, possesses. 20 C.F.R. §§ 404.1526(a), 416.926(a) (2005). Under SSDI, if a claimant has "more than one impairment, and none of them meets or equals a listed impairment," the Commissioner is required to review the claimant's impairments together "to determine whether the *combination* of [his] impairments" demonstrates medically equivalency. 20 C.F.R. § 404.1526(a) (2005) (emphasis added). Similar language is used in the SSI regulations:

> If you have an impairment that is not described in the Listing of Impairments in appendix 1, or you have a combination of impairments, no one of which meets or is medically equivalent to a listing, we will compare your medical findings with those for closely analogous listed impairments. If the medical findings related to your impairment(s) are at least of equal medical significance to those of a listed impairment, we will find that your impairment(s) is medically equivalent to the analogous listing.

20 C.F.R. § 416.926(a)(2) (2005).

In the instant case, Dr. Solomon provided uncontroverted testimony that Aubu-

---

**2.** According to the regulations' appendix, a hematocrit of less than thirty percent constitutes a listed impairment in certain circum-stances. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 5.08B(2) (2005).

chon's impairments, when viewed in combination, were medically equivalent to a listed impairment, most notably Listing 5.05 which applies to chronic liver disease. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 5.05 (2005).[3] It is significant that Dr. Solomon was called as a medical expert by the ALJ himself, that no other physician testified at the hearing, and that Dr. Solomon affirmed that he was able to review all of Aubuchon's medical records. (See A.R. at 108–10, 446.) To be sure, Dr. Solomon opined that Aubuchon did not meet a listed impairment during the relevant time frame. (*Id.* at 449.) However, Dr. Solomon did testify about equivalency, in particular, that "the combination" of Aubuchon's impairments medically equaled a listed impairment. This testimony appears to have been ignored by the ALJ.

Dr. Solomon repeatedly testified in response to questions posed by the ALJ that Aubuchon's liver disease, in combination with his back problems, was medically equivalent to a listed impairment, even though neither may have been a listed impairment:

Q.... [H]ow would [Aubuchon's] back problem supplement that portion of the [liver disease] listing which is not met? How does it—

A. Well, my view of it is that they both contribute to his—to a, a physical impairment. So while it doesn't meet the particular listing, it's *the combination is of a severity—*

. . . . .

A.... [T]*hey both contribute to his global impairment.*

. . . . .

Q. Was that your understanding of what equaling a listing would be? Looking at, at a global situation, but without being able to relate to a specific—

A.... My, my impression is that it's— can be multiple systems that would equal an impairment and not—doesn't have to be a particular system that's, that's been made equal by another disor-

---

**3.** In full, Listing 5.05 provides as follows:

5.05 Chronic liver disease (e.g., portal, postnecrotic, or biliary cirrhosis; chronic active hepatitis; Wilson's disease). With:
A. Esophageal varices (demonstrated · by endoscopy or other appropriate medically acceptable imaging) with a documented history of massive hemorrhage attributable to these varices. Consider under a disability for 3 years following the last massive hemorrhage; thereafter, evaluate the residual impairment; or
B. Performance of a shunt operation for esophageal varices. Consider under a disability for 3 years following surgery; thereafter, evaluate the residual impairment; or
C. Serum bilirubin of 2.5 mg. per deciliter (100 ml.) or greater persisting on repeated examinations for at least 5 months; or
D. Ascites, not attributable to other causes, recurrent or persisting for at least 5 months, demonstrated by abdominal paracentesis or associated with persistent hypoalbuminemia of 3.0 gm. per deciliter (100 ml.) or less; or

E. Hepatic encephalopathy. Evaluate under the criteria in listing 12.02; or
F. Confirmation of chronic liver disease by liver biopsy (obtained independent of Social Security disability evaluation) and one of the following:
1. Ascites not attributable to other causes, recurrent or persisting for at least 3 months, demonstrated by abdominal paracentesis or associated with persistent hypoalbuminemia of 3.0 gm. per deciliter (100 ml.) or less; or
2. Serum bilirubin of 2.5 mg. per deciliter (100 ml) or greater on repeated examinations for at least 3 months; or
3. Hepatic cell necrosis or inflammation, persisting for at least 3 months, documented by repeated abnormalities of prothrombin time and enzymes indicative of hepatic dysfunction.
20 C.F.R. Pt. 404, Subpt. P, App. 1 § 5.05 (2005).

der. *My impression was that the two would affect his ability to function in combination that would be equal to this list—to a listing.*

(A.R. at 450, 451–52 (emphasis added).) This testimony was clear, undisputed and in line with the regulations. Granted, as the ALJ noted, Aubuchon struggled with alcohol abuse. *See* 20 C.F.R. §§ 404.1525(e), 416.925(e) (2005) ("addiction to alcohol ... will not, by itself, be a basis for determining ... disab[ility]"). But Dr. Solomon limited himself to the impairments for which a disability may be determined via the listings, *i.e.*, Aubuchon's back impairments in combination with his liver disease.

Like Plaintiff, the court is somewhat perplexed that the ALJ did not grasp the concept of equivalency which Dr. Solomon applied. For example, during his questioning, the ALJ seemed to imply that Aubuchon's impairments were to be viewed in isolation or had to correspond exactly with a listed impairment:

Q. So I'm a little bit confused. What listing is met then?

A. What you say—

Q. What listing is met?

A. None is met at this time.

Q. Did you say he did meet a list—oh, none is met? Oh, I'm sorry.

A. None is met as far as I can tell. But the combination equals

Q. Okay. Now, that, I guess I—and which listing would you say it would be equal?

A. Yeah. I think it equals 5.05. In— not because of the—I mean, it's clear that he does have the chronic liver disease. But he, at the time, he did, he did have abnormalities of his enzymes. But he doesn't meet all the listings. And I don't—we don't have any information what his albumin was.

Q. Oh, I guess what I'm not clear on is—

A. But would—

Q. —how would [his] back problem supplement that portion of the listing which is not met? How does it—

A. Well, my view of it is that they both contribute to his—to a, a physical impairment. So while it doesn't meet the particular listing, it's the combination is of a severity—

(A.R. at 450–51. See also *id.* at 24 (ALJ opining that Dr. Solomon "somehow tried to contort the back problems in with the liver problems for the equivalent of subsection 3 under Listing Section 5.05F").) Whatever uncertainty the ALJ expressed, the regulations, as described, allow medical equivalency to be established by the combination of non-listed impairments. That is exactly the situation here.

In short, Dr. Solomon testified and concluded that the combination of Aubuchon's impairments constituted medical equivalency. Since his testimony was unrebutted, Aubuchon should have been deemed automatically disabled at step three. *See Coggon v. Barnhart*, 354 F.Supp.2d 40, 50 (D.Mass.2005) (should it be determined that a claimant is disabled at the third step, the inquiry ends) (citing *Goodermote*, 690 F.2d at 6–7). *See also St. Arnault*, 1995 WL 599224, at *4 (similar); *Du Breuil v. Bowen*, 677 F.Supp. 32, 33 (D.Mass.1986) (similar). As a result, the court has no choice but to find Aubuchon eligible for SSI and SSDI benefits for the period between December 31, 1999, and August 16, 2001.

## IV. CONCLUSION

For the reasons stated, Plaintiff's motion for judgment on the pleadings is ALLOWED and the Commissioner's motion to affirm is DENIED. The matter is

hereby remanded to the Commissioner for the limited purpose of calculating the benefits due between December 31, 1999, and August 16, 2001.

IT IS SO ORDERED.